**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1231
_____

UNITED STATES OF AMERICA

v.

GERALD OROCIO,
                    Appellant

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. Criminal Action No. 2-04-00725-001)
District Judge:  Honorable William H. Walls

_____

Argued January 24, 2011
_____

Before:  FUENTES and CHAGARES, <u>Circuit Judges</u>, and
POLLAK, <u>District Judge</u><sup>*</sup>

_____

<sup>*</sup>  Honorable Louis H. Pollak, Senior Judge of the United
States District Court for the Eastern District of Pennsylvania,
sitting by designation.

(Opinion filed: June 29, 2011)

John R. Alcorn, Esq. (Argued)
Sophie M. Alcorn, Esq.
Law Offices of John R. Alcorn
2212 Dupont Drive
Suite V
Irvine, CA 92612

      *Counsel for Appellant*

Mark E. Coyne, Esq.
Camelia Valdes
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102-0000

      - and -

Norman Gross, Esq. (Argued)
Office of the United States Attorney
Camden Federal Building & Courthouse
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101-0000

      *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

POLLAK, District Judge.

On October 7, 2004, pursuant to a plea agreement and on advice of counsel, Gerald Orocio pled guilty in the United States District Court for the District of New Jersey to one count of simple possession of a controlled substance in violation of 21 U.S.C. § 844(a). This 2004 conviction triggered removal proceedings initiated against Mr. Orocio some years later.[1] Mr. Orocio then filed a petition for writ of error coram nobis in the District Court to challenge the plea conviction, arguing that his attorney's failure to advise him of the immigration consequences of pleading guilty to a federal drug charge constituted ineffective assistance of counsel in violation of the Sixth Amendment rights pronounced in *Strickland v. Washington*, 466 U.S. 668 (1984). On January 6, 2010, the District Court denied Mr. Orocio's petition, and Mr. Orocio filed the timely appeal now before us. During the pendency of this appeal, the Supreme Court decided *Padilla v. Kentucky*, 559 U.S. __, 130 S. Ct. 1473 (2010). In *Padilla*, the Court, addressing for the first time a factual scenario akin to Mr. Orocio's, ruled that *Strickland* requires plea counsel to advise an alien defendant of the potential removal consequences of a recommended plea. The government contends that *Padilla*'s holding is not pertinent to Mr. Orocio's situation for the reason that *Padilla*, decided in 2010, announced a "new rule . . . not dictated by precedent existing at the time [2005] the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989). Hence, in the government's view, *Padilla* lacks retroactive applicability. For the reasons that follow, we hold that

---

[1] Removal proceedings were initiated in 2007 or later. The record does not establish the precise date.

3

*Padilla* is retroactively applicable on collateral review, and we therefore vacate the judgment of the District Court and remand for further proceedings.

## I.    Background[2]

Gerald Orocio was born in the Philippines in 1977, and he became a lawful permanent resident of the United States on September 4, 1997.  Mr. Orocio was arrested in New Jersey on October 3, 2003, and he was later charged by indictment in federal court with drug trafficking.  At that time, he was questioned regarding his immigration status, and he advised that he was a lawful permanent resident.  He was initially assigned a public defender, but he discharged her because she recommended that he plead guilty to the trafficking offense and serve a ten-year sentence.  A private attorney, Joseph A. Portelli, was retained in June 2004, and he represented Mr. Orocio in the balance of the criminal proceedings.

In his coram nobis petition, Mr. Orocio has alleged that on or about October 7, 2004, Mr. Portelli told him that the government had offered a plea agreement in which he would be charged with controlled substance possession instead of drug trafficking and would receive a sentence of

---

[2] The only source of facts underlying the allegations contained in this section, apart from the official record in the underlying criminal proceeding, is Mr. Orocio's two-page affidavit filed in support of his petition for writ of error coram nobis.  *See* App. 38–39 (Orocio Aff.).  No other supporting affidavits, and no opposing affidavits, were submitted, and the District Court dismissed the petition without conducting an evidentiary hearing.

time served plus a two-year period of supervised release. According to Mr. Orocio, Mr. Portelli did not inform him of the immigration consequences of the proposed guilty plea. Mr. Orocio accepted the plea agreement, and on October 7, 2004, he pled guilty to one count of possession of a controlled substance (methamphetamine) in contravention of 21 U.S.C. § 844. He was sentenced on March 10, 2005, to time served and two years of supervised release.

Mr. Orocio successfully completed his sentence and was discharged from supervision in 2007. Subsequent to completion of his sentence, Mr. Orocio was placed in removal proceedings.[3] He consulted with an immigration attorney, his present counsel, who advised him that removal proceedings were initiated because he had pled guilty to a controlled substance offense and was therefore facing mandatory deportation. In hopes of halting the removal proceedings, Mr. Orocio filed a petition for a writ of error coram nobis[4] in the

---

[3] *See* note 1, *supra*.

[4] The writ of error coram nobis "is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer 'in custody' for purposes of 28 U.S.C. § 2255." *United States v. Stoneman*, 870 F.2d 102, 105–06 (3d Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512–13 (1954)). The writ is available to "persons not held in custody [to] attack a conviction for fundamental defects, such as ineffective assistance of counsel." *United States v. Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d 740, 744 (3d Cir. 1979). Coram nobis relief is "reserved for exceptional circumstances," *United States v. Osser*, 864 F.2d 1056, 1059 (3d Cir. 1988), and it is appropriate only "to correct errors for which there

District Court on November 30, 2009, and removal proceedings were stayed pending resolution of the petition. The basis of Mr. Orocio's petition was that his plea counsel, Mr. Portelli, failed in two ways to provide the effective assistance of counsel required by *Strickland*. First, Mr. Orocio argued that Mr. Portelli was ineffective because he did not try to secure for Mr. Orocio a guilty plea pursuant to the Federal First Offender Act, 18 U.S.C. § 3607—a disposition that might ultimately have resulted in dismissal of the charges. Second, Mr. Orocio argued that (1) Mr. Portelli was ineffective because he did not advise Mr. Orocio of the immigration consequences—namely, mandatory removal—of pleading guilty to drug possession. Mr. Orocio contends that (2) he would not have pled guilty had he been correctly advised of that near certainty.

The District Court denied the petition on January 6, 2010. After identifying *Strickland* as providing the governing standard, the District Court dismissed the petition without a hearing on the ground that, even if his plea counsel was ineffective, Mr. Orocio had failed to demonstrate prejudice as required under *Strickland*. Mr. Orocio timely appealed.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction over the petition for

---

was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier," *Stoneman*, 870 F.2d at 106 (quoting *Morgan*, 346 U.S. at 512). Because the District Court did not address the requirements for coram nobis relief other than the fundamental defect of *Strickland* error, we leave such issues to be addressed in the first instance on remand.

writ of error coram nobis, made available to federal courts in criminal matters under the All Writs Act, 28 U.S.C. § 1651(a), in aid of the courts' jurisdiction over criminal proceedings pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

This court has not yet articulated the precise standard of review to apply to a district court's denial of a petition for writ of error coram nobis. The parties disagree as to the appropriate standard, with Mr. Orocio arguing for plenary review, and the government arguing for abuse of discretion. Other circuits have also considered this issue; the Courts of Appeals for the Sixth and Ninth Circuits have held that the "determination of legal issues in *coram nobis* proceedings" should be reviewed *de novo*, but that findings of fact are reviewed for clear error. *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001); *Hirabayashi v. United States*, 828 F.2d 591, 594 (9th Cir. 1987). We find this standard to be the most logically appropriate and therefore adopt it.

## III. Discussion

We begin by examining the Supreme Court's *Padilla* decision and its implications. Next, given that (a) Mr. Orocio's guilty plea was in 2004, (b) Mr. Orocio completed his sentence in 2007, and (c) *Padilla* was decided in 2010, we assess whether Mr. Orocio is entitled, retroactively, to the benefit of that ruling. Whether *Padilla* is retroactive is a *Teague v. Lane* problem, and we hold that, under *Teague v. Lane*, *Padilla* is retroactively applicable. We then examine the two *Strickland* prongs—ineffective assistance of counsel and prejudice. With respect to the first prong, we first evaluate whether Mr. Orocio has alleged a prima facie ineffective assistance claim under *Padilla*. We hold that he

7

has. Finally, we turn to prejudice. The District Court, confining its analysis to prejudice, held as a matter of law that Mr. Orocio had not been prejudiced because he could not establish that, had he rejected the proffered guilty plea, there was a reasonable probability that he would not have been found guilty at trial. We hold that Mr. Orocio has alleged sufficient prejudice under *Strickland* and subsequent case law to warrant a remand to determine what options he could have pursued.

## A. The Supreme Court decides *Padilla*

Soon after the District Court denied Mr. Orocio's coram nobis petition and this appeal was docketed, the Supreme Court decided *Padilla v. Kentucky*, a case that goes to the heart of Mr. Orocio's claim. The *Padilla* decision clarified the *Strickland* standard for ineffective assistance of counsel in the context of the immigration consequences of plea agreements. The *Padilla* Court ruled that counsel, in order to be constitutionally competent, has an obligation to advise criminal defendants whether an offense to which they may plead guilty will result in removal from the United States. 130 S. Ct. at 1478.

To do so, the Court first had to determine whether *Strickland* applied at all to advice concerning the immigration consequences of a plea. Eschewing the view of a number of state and federal courts that immigration consequences were "collateral" and thereby beyond the scope of the representation required by the Sixth Amendment, the Court held that because "deportation is a particularly severe 'penalty,' . . . advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at 1481–82. Thus, the

8

Court highlighted the need to apply *Strickland*'s two-prong test for ineffective assistance of counsel in Jose Padilla's case: (1) the performance prong—i.e., "whether counsel's representation 'fell below an objective standard of reasonableness'"; and (2) the prejudice prong—i.e., "whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 1482 (quoting *Strickland*, 466 U.S. at 688, 694).

In addressing the first *Strickland* prong, the Court concluded that Jose Padilla "ha[d] sufficiently alleged constitutional deficiency" in his attorney's failure to advise him of a plea's immigration consequences. *Id.* at 1483. The Court noted that "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction," which was a controlled substance offense rendering him removable pursuant to 8 U.S.C. § 1227(a)(2)(B)(i). *Id.* The Court went on to observe that:

> Padilla's counsel could have easily determined that his plea would make him eligible for [removal] simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be

9

> determined from reading the removal statute, his [removal] was presumptively mandatory, and his counsel's advice was incorrect.

*Id.*[5]  The Court then rejected the suggestion of the Solicitor General, as *amicus curiae*, to limit *Strickland* in the context of Padilla's claim only to the extent he alleged affirmative misadvice about immigration consequences, as opposed to the mere failure to provide any advice at all. *Id.* at 1484–86. In declining to follow the Solicitor General's recommendation, the Court said "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like [removal] and the failure to do so clearly satisfies the first prong of the *Strickland* analysis." *Id.* at 1484 (internal quotation marks omitted).

The *Padilla* Court expressly refrained from determining whether Jose Padilla had met the second *Strickland* prong and demonstrated that he had been prejudiced. That issue was remitted "to the Kentucky courts to consider in the first instance." *Padilla*, 130 S. Ct. at 1483–84.

### B. Retroactivity of *Padilla*

Because *Padilla* was decided after Mr. Orocio's

---

[5] Recognizing that "[i]mmigration law can be complex," the Court also held that "[w]hen the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." 130 S. Ct. at 1483. This, like *Padilla*, is not such a case.

10

conviction became final, we must consider whether retroactivity principles bar the application of *Padilla*'s holding to this case.

### 1. *Teague* **and retroactivity**

In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court set forth two regimes governing the retroactive application of constitutional principles to criminal cases. *Teague* divided the world into two categories, "old rules" and "new rules." A rule is a "new rule" for *Teague* purposes "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* at 301. *Teague* held that a "new rule" is retroactively applicable to cases on collateral review if and only if one of two exceptions apply: (1) the new rule places certain kinds of criminal conduct beyond the power of the criminal law-making authority to proscribe; or (2) the new rule is a "watershed rule[] of criminal procedure" that "alter[s] our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction." *Teague*, 489 U.S. at 311 (emphasis in original) (internal quotation marks omitted). By contrast, an "old rule," applies on both direct and collateral review. *See Whorton v. Bockting*, 549 U.S. 406, 416 (2007).

Thus, if *Padilla* did not announce a "new rule," then Mr. Orocio would be entitled to invoke the protection of *Padilla* even though his conviction had achieved finality and his sentence was fully served prior to *Padilla*. If *Padilla* announced a "new rule," however, then Mr. Orocio would have to demonstrate that it falls within one of the very narrow *Teague* exceptions.

11

## 2. Does *Padilla* apply retroactively under *Teague*?

The government argues that *Padilla* is a "new rule" in two ways.

First, it argues that *Padilla* is a "new rule" because it has extended *Strickland*'s Sixth Amendment analysis to a non-criminal setting—namely, the failure of criminal defense counsel to advise a client of the mandatory civil removal consequences of pleading guilty to drug trafficking charges. It is true that the precise question of whether the civil removal consequences of a plea are within the scope of *Strickland* had never been addressed by the Supreme Court before *Padilla*. But that is an incomplete approach to the *Strickland* question presented in this case. The question we confront is whether counsel has been constitutionally adequate in advising a criminal defendant whether to accept a plea bargain. The Court held only one year after *Strickland* that "the same two-part standard [of *Strickland*] . . . [is] applicable to ineffective-assistance claims arising out of the plea process," and a court must therefore determine "whether counsel's advice [to accept a plea] was within the range of competence demanded of attorneys in criminal cases." *See Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985) (internal quotation marks omitted). In *Padilla*, the Court relied on "recent changes in our immigration law [that] have made removal nearly an automatic result for a broad class of noncitizen offenders." *Padilla*, 130 S. Ct. at 1481. Moreover, the *Padilla* Court noted that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*," a distinction "ill-suited" for removal scenarios. *Id.* at 1481–82. The application of *Strickland* to

12

the *Padilla* scenario is not so removed from the broader outlines of precedent as to constitute a "new rule," for the Court had long required effective assistance of counsel on all "important decisions," *Strickland*, 466 U.S. at 688, in plea bargaining that could "affect[] the outcome of the plea process," *Hill*, 474 U.S. at 59. In that light, *Padilla* is best read as merely recognizing that a plea agreement's immigration consequences constitute the sort of information an alien defendant needs in making "important decisions" affecting "the outcome of the plea process," and thereby come within the ambit of the "more particular duties to consult with the defendant" required of effective counsel. *Strickland*, 466 U.S. at 688. Far from extending the *Strickland* rule into uncharted territory, *Padilla* reaffirmed defense counsel's obligations to the criminal defendant during the plea process, a critical stage in the proceedings.

Second, the government argues that *Padilla* "clearly broke new ground regarding counsel's duty to advise her client about [removal], and was not 'dictated' by prior Supreme Court[6] precedent." We are convinced that *Padilla*

---

[6] However, nothing in *Teague* restricts the dictating source to Supreme Court precedent. That is a condition for habeas relief under AEDPA, but not a requirement under *Teague*. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., for the Court) ("With one caveat, whatever would qualify as an old rule under our *Teague* jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under [AEDPA]. The one caveat, as the statutory language makes clear, is that [AEDPA] restricts the source of clearly established law to this Court's jurisprudence." (citation omitted)).

did not "br[eak] new ground" in holding that counsel must inform a criminal defendant of the immigration consequences of a guilty plea in order to be constitutionally adequate. Although the *Padilla* Court acknowledged that some courts had previously held that the "'failure of defense counsel to advise the defendant of possible [removal] consequences is not cognizable as a claim for ineffective assistance of counsel,'" 130 S. Ct. at 1481, the Court straightforwardly applied the *Strickland* rule—and the norms of the legal profession that insist upon adequate warning to criminal defendants of immigration consequences—to the facts of Jose Padilla's case. *See id.* at 1482 ("*Strickland* applies to Padilla's claim. . . . Under *Strickland*, we first determine whether counsel's representation fell below an objective standard of reasonableness." (internal quotation marks omitted)).

At bottom, our inquiry focuses on whether *Padilla*'s application of the *Strickland* standard to a new factual context is a "new rule" for *Teague* purposes. The *Strickland* standard "provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." *Lewis v. Johnson*, 359 F.3d 646, 655 (3d Cir. 2004) (internal quotation marks omitted). In *Lewis*, the most recent instance in which we performed this kind of analysis, we sought to determine whether the Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000), holding that counsel has a duty to consult with his client about taking an appeal under certain circumstances, announced a new rule. We found that it did not, and in doing so, discussed in some detail the appropriate retroactivity analysis for cases involving *Strickland*.

Looking to the intersection of *Strickland* and *Teague*,

14

we made three observations that guide the "new rule" inquiry: (1) "case law need not exist on all fours to allow for a finding under *Teague* that the rule at issue was dictated by . . . precedent," *Lewis*, 359 F.3d at 655; (2) "*Strickland* is a rule of general applicability which asks whether counsel's conduct was objectively reasonable and conformed to professional norms based 'on the *facts of the particular case*, viewed as of the time of counsel's conduct,'" *id.* (quoting *Strickland*, 466 U.S. at 690 (emphasis in quotation)); and (3) "'it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent,'" *id.* (quoting *Wright v. West*, 505 U.S. 277, 308–09 (1992) (Kennedy, J., concurring in judgment) (emphasis omitted)).

"[T]he *Strickland* Court identified 'certain basic duties' that . . . criminal defense attorneys must carry out to perform competently within the meaning of the Sixth Amendment," including a duty "to consult with the defendant on important decisions." *Id.* at 656 (internal quotation marks omitted) (emphasis omitted). When the Supreme Court decides a *Strickland* case with novel facts, we do not place "emphasis on the *particular* duty identified by the [Supreme] Court . . . as a basis for classifying th[e] rule as 'new' for *Teague* purposes." *Id.* at 655 (emphasis in original). We look instead to "precedents and then-existing professional norms" to determine whether the decision "broke . . . new ground." *Id.* at 656.

*Padilla* followed from the clearly established principles of the guarantee of effective assistance of counsel. *Strickland* and *Hill* required counsel to advise criminal defendants at the plea stage in accordance with precedent and prevailing professional norms to ensure that the defendant makes an informed, knowing, and voluntary decision whether

15

to plead guilty. *Padilla* is set within the confines of *Strickland* and *Hill*, as it concerns what advice an attorney must give to a criminal defendant at the plea stage. When Mr. Orocio pled guilty, it was "hardly novel" for counsel to provide advice to defendants at the plea stage concerning the immigration consequences of a guilty plea, undoubtedly an "important decision" for a defendant. *See Padilla*, 130 S. Ct. at 1485 ("For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the [removal] consequences of a client's plea."). *Padilla* "merely clarified the law as it applied to the particular facts of that case." *Cf. Lewis*, 359 F.3d at 655. We therefore hold that *Padilla* "broke no new ground in holding the duty to consult also extended to counsel's obligation to advise the defendant" of the immigration consequences of a guilty plea and "did not 'yield[] a result so novel that it forge[d] a new rule.'" *See id.* at 657, 655 (alterations in original).

The government relies heavily on Justice Alito's observation in *Padilla* that "[u]ntil today, the longstanding and unanimous position of the federal courts was that reasonable defense counsel generally need only advise a client about the direct consequences of a criminal conviction."[7] 130 S. Ct. at 1487 (Alito, J., concurring in the

---

[7] Justice Alito cited to two federal appellate cases—one decided in 2000 and the other in 1993—and a 2002 article by Chin & Holmes in the Cornell Law Review. *See* 130 S. Ct. at 1487 (Alito, J., concurring in the judgment) (citing *United States v. Gonzalez*, 202 F.3d 20 (1st Cir. 2000), *United States v. Banda*, 1 F.3d 354 (5th Cir. 1993), and Chin & Holmes, *Effective Assistance of Counsel and the Consequences of Guilty Pleas*, 87 Cornell L. Rev. 697, 699 (2002)).

judgment).  The government sees this as convincing evidence that *Padilla* announced a "new rule."  However, *Strickland* did not freeze into place the objective standards of attorney performance prevailing in 1984, never to change again.  *See* 466 U.S. at 688 ("The Sixth Amendment . . . relies instead on the legal profession's *maintenance* of standards . . . ." (emphasis added)).  The Court's opinion in *Padilla* reiterated this reference to "the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  130 S. Ct. at 1482 (quoting *Strickland*, 466 U.S. at 688); *id.* ("We have long recognized that '[p]revailing norms of practice as reflected in American Bar Association Standards and the like . . . are guides to determining what is reasonable . . . ." (alterations in original) (quoting *Strickland*, 466 U.S. at 688)).

Lower court decisions not in harmony with *Padilla* were, with few exceptions, decided before 1995 and pre-date the professional norms that, as the *Padilla* court recognized, had long demanded that competent counsel provide advice on the removal consequences of a client's plea.[8] *Padilla*, 130 S.

---

[8] The large bulk of the authority that excused counsel from providing advice on removal consequences predates the professional norms identified in *Padilla*.  *See* Chin & Holmes, 87 Cornell L. Rev. at nn.67–124 (citing federal and state cases from 1972 to 2001, the bulk of which are pre-1995)); *see also Miller v. State*, 11 A.3d 340, 349–51 (Md. Ct. Spec. App. 2010) (citing federal appellate cases from 1985, 1988, 1989, 1990, 1992, 1993, 2000, and 2003).  Judicial opinions vintage 1995 or older, of course, involve facts from even earlier dates.

17

Ct. at 1485. While at the time of those early decisions courts had not yet recognized that a lawyer fails in his professional duty when he does not advise an alien client of the potentially grave immigration consequences of a guilty plea, by 2004, when Mr. Orocio pled guilty, the norms of effective assistance—norms keyed to contemporaneous professional standards—had become far more demanding.

Every *Strickland* claim requires a fact-specific inquiry, but it is not the case that every *Strickland* ruling on new facts requires the announcement of a "new rule." We have held in *Lewis*, 359 F.3d at 655, quoting Justice Kennedy's observations in *Wright*, 505 U.S. at 308–09 (Kennedy, J., concurring in the judgment), that under rules that require a "'case-by-case examination of the evidence, . . . we can tolerate a number of specific applications without saying that those applications themselves create a new rule.'" Accordingly, a court's disposition of each individual factual scenario arising under the long-established *Strickland* standard is not in each instance a "new rule," but rather a new application of an "old rule" in a manner dictated by precedent. *Padilla* is no different.

Indeed, close scrutiny of the *Padilla* opinion leads us to consider it not unlikely that the *Padilla* Court anticipated the retroactive application of its holding on collateral review when it considered the effect its decision would have on final convictions:

> We have given serious consideration to the concerns that the Solicitor General, respondent, and *amici* have stressed regarding the importance of protecting the finality of

18

> convictions obtained through guilty pleas.[9]
> We confronted a similar "floodgates" concern
> in *Hill*, but nevertheless applied *Strickland* to a
> claim that counsel had failed to advise the client
> regarding his parole eligibility before he
> pleaded guilty. . . . A flood did not follow in
> that decision's wake.

130 S. Ct. at 1484–85 (citation omitted) (footnote omitted). We therefore hold that, because *Padilla* followed directly from *Strickland* and long-established professional norms, it is an "old rule" for *Teague* purposes and is retroactively applicable on collateral review.[10] Mr. Orocio is thus entitled

---

[9] Kentucky, the respondent in *Padilla*, was concerned that a ruling in Padilla's favor "would open the door to innumerable challenges to pleas" and "greatly lessen the certainty and finality sought by use of the plea process." Br. for Resp't at 19, *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) (No. 08-651), 2009 WL 2473880. The United States, as *amicus curiae* in support of affirmance, was particularly concerned about a "strain [on] judicial and prosecutorial resources" caused by "an influx of challenges to long-final pleas." Br. of the United States at 19, *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) (No. 08-651), 2009 WL 2509223. Twenty-seven states, as *amici curiae* in support of Kentucky, emphasized their concern that "even an incremental weakness in the finality of these pleas may have a dramatic effect on the integrity and effectiveness of the U.S. system of justice." Br. of La. et al. at 10–11, *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) (No. 08-651), 2009 WL 2564713.

[10] In the year since *Padilla* was decided, state courts and federal district courts considering *Padilla*'s retroactivity have

to the benefit of its holding.

**C.  Under *Padilla* and *Strickland*, was Mr. Orocio's plea counsel ineffective?**

Mr. Orocio alleges that neither his prior counsel nor Mr. Portelli advised him that accepting the proposed guilty pleas would result in near-mandatory removal from the United States.  We address a question left unanswered by the District Court: did this alleged failure to advise constitute ineffective assistance of counsel under the first prong of the *Strickland* test?  Our analysis is rendered straightforward by *Padilla*.  *Padilla* recognized that the failure of defense counsel to warn a defendant that a plea would make the defendant eligible for removal is a constitutional defect in representation that satisfies the first prong of the *Strickland* test.  130 S. Ct. at 1483.  The facts of *Padilla* closely mirror those presented here, and we therefore hold that Mr. Orocio's affidavit sufficiently alleges that his counsel was constitutionally deficient.

Jose Padilla was subject to removal for a controlled substance offense.  His attorney affirmatively misled him, telling Padilla prior to Padilla's guilty plea that he "did not have to worry about immigration status since he had been in the country so long."  *Id.* at 1478.  While Mr. Orocio does not

---

reached differing conclusions.  *See, e.g.*, *Doan v. United States*, 760 F. Supp. 2d 602 (E.D. Va. 2011) (*Padilla* not retroactive); *United States v. Chaidez*, 730 F. Supp. 2d 896 (N.D. Ill. 2010) (*Padilla* retroactive); *Miller v. State*, 11 A.3d 340 (Md. Ct. Spec. App. 2010) (*Padilla* not retroactive); *People v. Garcia*, 29 Misc. 3d 756 (N.Y. Sup. Ct. 2010) (*Padilla* retroactive).

allege that Mr. Portelli affirmatively misled him, Mr. Orocio does allege that Mr. Portelli wholly failed to advise him of the near-certain removal consequence of pleading guilty to a controlled substance offense. The *Padilla* Court expressly rejected any requirement that a defendant be affirmatively misled; for cases such as those in which the consequences can be divined "simply from reading the text of the statute," the mere failure to warn of a removal consequence is constitutionally deficient representation because "there is no relevant difference between an act of commission and an act of omission." *Id.* at 1483, 1484 (internal quotation marks omitted).

We find unpersuasive the government's argument that, because *Strickland* measures counsel's performance "on the facts of the particular case viewed as of the time of counsel's conduct," Mr. Orocio's claim should fail because it was not reasonable to expect his attorney, in 2004, to predict a Supreme Court decision nearly six years later. This argument misses the mark.[11] His attorney is not alleged to be deficient because he failed to predict the *Padilla* decision—he is alleged to be deficient because he did not measure up to prevailing professional norms demanded of counsel at the plea stage as required by *Strickland* and its progeny. The *Strickland* decision did not hold that only existing Supreme

---

[11] Indeed, it is at odds with the underlying facts of *Padilla*. There, the conviction, the failure to advise, and the plea dated back to 2002. *See Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008). Because Mr. Padilla's attorney was found to be deficient under the prevailing professional norms of 2002, it is not unreasonable to apply those same norms to Mr. Orocio's attorney in 2004.

21

Court decisions guide the reasonableness inquiry. Instead, it said:

> More specific guidelines are not appropriate. The Sixth Amendment refers simply to "counsel," not specifying particular requirements of effective assistance. It relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.

466 U.S. at 688 (citation omitted). After reiterating that language from *Strickland*, the *Padilla* Court stated that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." 130 S. Ct. at 1482 (citing sources from 1993, 1995, 1997, 1999, 2000, 2002, and 2004). These professional norms did not come into being on the date of the *Padilla* decision, but quite the opposite: the *Padilla* decision reflected the fact that these professional norms were well established long before the *Padilla* decision—indeed, they were well established prior to the alleged deficiency of Mr. Orocio's attorney.[12] In any event, counsel had been required to adhere to professional norms in the decades since *Strickland*, and all of the sources of prevailing professional norms cited by the Court in *Padilla* pre-date Mr. Orocio's conviction and his attorney's failure to advise. It did not take the *Padilla* decision to establish what Mr. Portelli was required to do as a

---

[12] *See* note 11, *supra*.

competent defense attorney.

In light of the long-standing principle that counsel will be held to the prevailing legal standards of the profession, it is beyond cavil that Mr. Orocio's counsel was constitutionally deficient under the first prong of the *Strickland* inquiry if, as is alleged, he did not advise Mr. Orocio of the adverse immigration consequences of his guilty plea to a controlled substance offense in accordance with the then-prevailing professional norms.

### D. Was Mr. Orocio prejudiced by his plea counsel's ineffectiveness?

Having determined that, assuming the truth of Mr. Orocio's affidavit, Mr. Orocio's counsel was ineffective under the standard laid out by *Padilla* and *Strickland*, and that *Padilla* is retroactively applicable, we turn to the question of whether Mr. Orocio has sufficiently alleged that counsel's failure properly to advise prejudiced him. That is, we must determine "whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla*, 130 S. Ct. at 1482 (quoting *Strickland*, 466 U.S. at 694). A "reasonable probability" is a standard of proof "somewhat lower" than a preponderance of the evidence. *Strickland*, 466 U.S. at 694.

Although the *Padilla* decision clearly imposes a duty on counsel during the negotiation of a plea bargain, "a critical phase of litigation for purposes of the Sixth Amendment Right to effective assistance of counsel[,] . . . to inform her noncitizen client that he faces a risk of deportation," *Padilla*, 130 S. Ct. at 1486, it does not undertake to provide instruction on whether a client was prejudiced by the

23

ineffectiveness, *id.* at 1483–84. Instead, we turn to longstanding Supreme Court precedent to guide the prejudice inquiry.

In a challenge to a guilty plea based on ineffective assistance of counsel, the prejudice inquiry takes the form of "whether counsel's constitutionally ineffective performance affected the outcome *of the plea process*." *Hill*, 474 U.S. at 59 (emphasis added). "[I]n order to satisfy the 'prejudice' requirement [of *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* "This assessment, in turn, will depend in large part," but not exclusively, "on a prediction whether the [errors] likely would have changed the outcome of a trial." *Id.*

The District Court ultimately based its determination that there was no prejudice on its finding that Orocio had not shown that he would have been acquitted, had he gone to trial. In so doing, the District Court followed an older line of reasoning in this Circuit which originated in *United States v. Nino*, 878 F.2d 101, 105 (3d Cir. 1989). The Supreme Court, however, requires only that a defendant have rationally gone to trial in the first place, and it has never required an affirmative demonstration of likely acquittal at such a trial as the *sine qua non* of prejudice. *See Hill*, 474 U.S. at 59. To the extent that we have previously interpreted *Hill* to require such a showing, the Supreme Court's intervening decision in *Padilla* (of which the District Court did not have the benefit) has made it clear that that is not appropriate. Instead, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances," *Padilla*, 130 S. Ct. at

24

1485, and a rational decision not to plead guilty does not focus solely on whether a defendant would have been found guilty at trial—*Padilla* reiterated that an alien defendant might rationally be more concerned with removal than with a term of imprisonment, s*ee id.* at 1483 (recognizing that "'[p]reserving a client's right to remain in the United States may be more important to the client than any potential jail sentence'" (quoting *St. Cyr*, 533 U.S. at 323)). Therefore, *Nino*'s requirement that a defendant affirmatively show that he would been acquitted in order to establish prejudice in this context is no longer good law.[13] *See In re Krebs*, 527 F.3d 82, 84 (3d Cir. 2008) ("A panel of this Court may reevaluate the holding of a prior panel which conflicts with intervening Supreme Court precedent.").

Mr. Orocio argues two forms of prejudice from his attorney's failure to inform him of possible immigration consequences. First, he argues that prejudice should be presumed in his case because the failure to advise of immigration consequences is "easy to identify and prevent." Second, he argues that he suffered actual prejudice because he would have chosen to go to trial instead of agreeing to a plea that subjected him to automatic deportation. We reject his first contention, but we agree with his second.

With respect to presumed prejudice, Mr. Orocio takes the "easy to identify and prevent" standard from *Strickland*. When taken in context, however, the language does not support a finding of presumed prejudice in this case. The full passage from *Strickland* reads as follows:

---

[13] The *Nino* panel declined to find prejudice where petitioner "would have pled guilty anyway or, had he not done so, *been found guilty after trial*." 878 F.2d at 105 (emphasis added).

> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive *denial of the assistance of counsel altogether* is legally presumed to result in prejudice. So are various kinds of *state interference* with counsel's assistance. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and *because the prosecution is directly responsible*, easy for the government to prevent.

466 U.S. at 692 (citations omitted) (emphases added). The Court further held that "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice [because] [t]he government is not responsible for, and hence not able to prevent, attorney errors that will result in a reversal of a conviction or sentence." *Id.* at 693. Mr. Orocio does not allege that he was denied the assistance of counsel altogether, and he does not allege that the government was responsible for his counsel's omission or interfered with his representation. Simply put, he has not alleged the type of scenario where government-caused prejudice is "so likely" that an examination into the facts of his particular case is "not worth the cost." Accordingly, his argument of presumed prejudice is unpersuasive, and he must "affirmatively prove prejudice."

In order to prove prejudice affirmatively, Mr. Orocio must show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

26

*Hill*, 474 U.S. at 59. Mr. Orocio's affidavit states that he "would have taken his case to trial" if he could not have secured a plea agreement that would avoid a removal consequence. App. 39. The District Court held that Mr. Orocio's prior concession of guilt during the plea colloquy was dispositive and necessarily foreclosed a credible, objectively reasonable claim that he would have nonetheless rolled the dice and gone to trial in the hope of avoiding removal:

> The Court rejects Mr. Orocio's argument because the second prong of *Strickland* requires him to show that, but for his counsel's errors, there is a reasonable probability that he would not have [pled] guilty and that he would not have been convicted at trial. Mr. Orocio has failed to show this. To the contrary, Mr. Orocio has not disputed the accuracy of the underlying facts giving rise to his guilty plea. Because Mr. Orocio has admitted in open court that he was guilty of the crime which he was convicted and does not now challenge his guilt (but merely asserts that a more favorable plea deal could have been negotiated on his behalf), the *Strickland* test is not satisfied and Mr. Orocio's motion cannot prevail.

App. 22. We disagree with this assessment. Mr. Orocio's guilty plea does not end the *Hill* inquiry because, had he not pled guilty, there would not have been any acknowledgement of guilt in open court foreclosing a rational decision to go to trial. Instead, the inquiry must focus on whether Mr. Orocio, if made aware of the dire immigration consequences of the proposed guilty plea, could have reasonably chosen to go to

27

trial even though he faced a drug distribution charge constituting an aggravated felony with a 10-year minimum sentence. We believe it would have been a reasonable decision.

In *Padilla*, the Supreme Court reiterated that "'[p]reserving the client's right to remain in the United States may be more important to the client than *any potential jail sentence*.'" *Padilla*, 130 S. Ct. at 1483 (quoting *INS v. St. Cyr*, 533 U.S. 289, 323 (2001)[14]) (alteration in original) (emphasis added). For the alien defendant most concerned with remaining in the United States, especially a legal permanent resident, it is not at all unreasonable to go to trial and risk a ten-year sentence and guaranteed removal, but with the chance of acquittal and the right to remain in the United States, instead of pleading guilty to an offense that, while not an aggravated felony, carries "presumptively mandatory" removal consequences. Just as "the threat of [removal] may provide the defendant with a powerful incentive to plead guilty to an offense that does not mandate that penalty in exchange for a dismissal of a charge that does," *id.* at 1486, the threat of removal provides an equally powerful incentive to go to trial if a plea would result in removal anyway. Mr.

---

[14] In *St. Cyr*, the Court held, *inter alia*, that the provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 curtailing the discretion of the Attorney General to waive removal of resident aliens did not apply retroactively to people who had entered into plea agreements expecting that they would be eligible for discretionary relief because the possibility of such relief was "one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." 533 U.S. at 321–23.

Orocio was only 27 years old at the time he entered the plea agreement, and he rationally could have been more concerned about a near-certainty of multiple decades of banishment from the United States than the possibility of a single decade in prison. Accordingly, we hold that, on the facts as alleged in his coram nobis petition, a decision by Mr. Orocio "to reject the plea bargain would have been rational under the circumstances." *Id.* at 1485; *accord State v. Sandoval*, 249 P.3d 1015, 1021–22 (Wash. 2011) (finding prejudice to lawful permanent resident defendant on similar facts).

The government further contends that any prejudice to Mr. Orocio was mitigated by two statements made by the District Court during the change of plea hearing and the later sentencing hearing. First, at the change of plea hearing, in October of 2004, the court made a brief reference to immigration authorities:

> [The court]: Nor is [the plea agreement]—and I should tell you too—it's not binding upon any civil authorities such as the Internal Revenue Service and it's not binding upon the Immigration and Naturalization Service.
>
> Do you understand that?
>
> [Mr. Orocio]: Yes.

App. 66. At the sentencing hearing, in March of 2005, the court again alluded to immigration authorities:

> You also . . . are to cooperate with Immigration and Customs Enforcement to resolve any problems with your status in this country. You

29

> are to provide truthful information and abide by the rules and regulations of Immigration and Customs Enforcement.
>
> If you are deported, Mr. Orocio, you cannot come back to this country without first getting the written permission of the Attorney General of this country. If you do come back, you are to report in person to the nearest United States Probation Office within 48 hours of your re-entry.

App. 52–53. The gist of the government's argument is that these two colloquies, in tandem, put Mr. Orocio on notice that he could be removed. With that notice, the government argues, Mr. Orocio should have prepared arguments on appeal or filed a § 2255 petition. The question under *Strickland* and *Hill*, however, is not whether Mr. Orocio had later access to remedies, but whether he would have pled guilty at all.

The allusion to immigration authorities at the change of plea hearing was insufficient to mitigate the prejudice suffered by Mr. Orocio. The fact that a plea agreement is not binding on the Immigration and Naturalization Service did not alert Mr. Orocio to the fact that his removal was a near certainty as a consequence of pleading guilty to a controlled substance offense. Moreover, the single reference to the INS was in the context of a series of warnings that included a statement that the plea agreement was not even binding on the District Court. App. 65. In sum, the warning at the change of plea hearing was sufficient to alert Mr. Orocio that his plea was binding on only himself and the government, *id.*, but was wholly insufficient to alert him of the immigration

consequences of a guilty plea.

The allusion to immigration authorities at sentencing was likewise insufficient to mitigate any prejudice. As the *Padilla* Court noted, because the law was "succinct and straightforward" and "truly clear" with respect to removal for controlled substance offenses, the District Court's sensible advice to Mr. Orocio to cooperate with ICE was too generalized—and, also, far too late in the process—to effectively alert Mr. Orocio to the severe removal consequences of his guilty plea of five months before. 130 S. Ct. at 1483.

We conclude that, assuming Mr. Orocio can establish at an evidentiary hearing the facts that he has alleged in his affidavit, Mr. Orocio will have shown prejudice in the *Strickland* sense flowing from the failure of counsel to inform him, at the time the guilty plea agreement was proffered, of the grave immigration consequences that acceptance of the agreement would entail.

## IV. Conclusion

Having concluded that Mr. Orocio's petition for a writ of error coram nobis failed to allege *Strickland* prejudice and hence was deficient as a matter of law, the District Court dismissed the petition without conducting an evidentiary hearing. The District Court's decision pre-dated the Supreme Court's decision in *Padilla*. We have ruled that *Padilla* has retroactive application. Accordingly, we will remand this case to the District Court in order to give that court the opportunity to decide this case within the framework of

31

*Padilla* and on the basis of a developed factual record.[15]  The judgment of the District Court will be vacated and the case remanded to that court.

---

[15] Because we vacate and remand in light of *Padilla*, we do not assess Mr. Orocio's alternative claim of ineffectiveness with respect to the Federal First Offender Act.

United States v. Orocio, No. 10-1231

CHAGARES, concurring in part and dissenting in part.

I join the majority's opinion as to section III, parts A, B, and C, but I cannot join section III, part D ("Was Mr. Orocio prejudiced by his plea counsel's ineffectiveness?"). In particular, I disagree with my learned colleagues that Padilla v. Kentucky, 559 U.S. ___, 130 S. Ct. 1473 (2010) compels the conclusion that our jurisprudence originating in United States v. Nino, 878 F.2d 101 (3d Cir. 1989) "is no longer good law." Majority Op. 22. I believe our jurisprudence remains fully intact and I therefore respectfully dissent. I also disagree with the majority as to its conclusion and judgment.

I.

A.

We have recognized the principle that "[o]ur Court makes every effort to maintain a consistent body of jurisprudence," United States v. Tann, 577 F.3d 533, 541 (3d Cir. 2009), and we will follow our prior precedential opinions unless our Court, sitting en banc, reconsiders an opinion, see Third Circuit Internal Operating Procedure 9.1. In addition, "[a]s an inferior court in the federal hierarchy, we are, of course, compelled to apply the law announced by the Supreme Court as we find it on the date of our decision." United States v. City of Phila., 644 F.2d 187, 192 n.3 (3d Cir. 1980).

We have admonished, however, that if "there has been no determinative ruling by the Supreme Court on [a] question, we are bound by [our prior opinions]." Brown v. United States, 508 F.2d 618, 625 (3d Cir. 1974). Our sister courts of appeals have similarly required that in the absence of a clear Supreme Court determination, courts of appeals should follow their own prior opinions. See, e.g., Rosas-Castaneda v. Holder, 630 F.3d 881, 887 (9th Cir. 2011) (noting a Supreme Court decision must be "clearly irreconcilable" with a prior court of appeals decision to overrule the decision) (quotation marks and citation omitted); Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 11 (1st Cir. 2009) ("Given that the Supreme Court has not clearly spoken, the interests of predictability are served by respecting our own prior language. . . ."); Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 344 F.3d 1288, 1292 (11th Cir. 2003) ("While an intervening decision of the Supreme Court can overrule a decision of a prior panel of our court, the Supreme Court decision must be clearly on point."); United States v. Stone, 306 F.3d 241, 243 (5th Cir. 2002) (holding "a clear contrary statement from the Supreme Court" will compel a court of appeals to depart from a prior decision); Public Serv. Co. of N.M. v. Gen. Elec. Co., 315 F.2d 306, 310 n.6 (10th Cir. 1963) (holding lower federal courts must apply "clear, direct, explicit, and unqualified statement[s] of the Supreme Court"). Accordingly, "[o]bedience to a Supreme Court decision is one thing, [but] extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit precedent law is another thing." Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228, 1230 (11th Cir. 2007).

B.

Turning to the applicable law, the majority correctly notes that the Supreme Court in Hill v. Lockhart, 474 U.S. 52 (1985) set forth the standard for analyzing the "prejudice" prong in challenges to guilty pleas based on ineffective assistance of counsel. In Hill, the Court held that, to meet the prejudice prong, "the defendant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. "This assessment, in turn, will depend in large part on a prediction whether the [errors] likely would have changed the outcome of a trial." Id. The Court in Hill further explained that courts may examine whether the defendant "likely would have succeeded at trial," Hill, 474 U.S. at 59, and observed that "these predictions of the outcome of a possible trial, where necessary, should be made objectively . . . ," id. at 59-60 (citing Strickland v. Washington, 466 U.S. 668, 695 (1984)).

Subsequent to Hill, this Court decided United States v. Nino, 878 F.2d at 105-06. In Nino, we considered a claim that petitioner's plea counsel was ineffective and that petitioner's conviction should be overturned because his plea counsel failed to advise him regarding the deportation consequences of his guilty plea. Importantly, we noted that the record was "replete with evidence of petitioner's guilt." Id. at 105. We held that petitioner could not "show that there [was] a reasonable probability that but for any error committed by his counsel the outcome of the proceeding would have been different," because "we conclude[d] that even had petitioner been advised of the deportation consequences of his guilty plea, he would have pled guilty

3

anyway or, had he not done so, [would have] been found guilty after trial." Id. Later decisions in this circuit have similarly analyzed whether a petitioner would have been found guilty or even asserted his or her factual innocence, in considering the prejudice prong.

The majority concludes that this line of our jurisprudence "is no longer good law" based upon a single line in Padilla. Although the Supreme Court in Padilla did not consider whether the petitioner had established prejudice, it mentioned that "[s]urmounting Strickland's high bar is never an easy task." 130 S. Ct. at 1485. The Court followed that statement with the line relied upon by the majority: "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Id.

This is certainly not the type of clear, direct, explicit, and contrary ruling by the Supreme Court that would justify abandoning our jurisprudence in this area. The Supreme Court's statement in Padilla is general and unremarkable and is consistent with its holding in Hill. The statement says nothing specific, particularly about the evidence to be reviewed in making a determination. Accordingly, I cannot agree that our jurisprudence originating in Nino is no longer good law.

My conclusion is supported by a more recent Supreme Court decision, Premo v. Moore, 131 S. Ct. 733 (2011). Like the present case, Hill, and Nino, Premo presented the issue of whether the allegedly inadequate assistance of plea counsel prejudiced a petitioner who entered into a plea agreement.

4

The Court in <u>Premo</u> explicitly recognized that <u>Hill</u> set forth the proper standard to resolve this issue.  <u>Id.</u> at 743, 745.

In reaching its determination that no prejudice had been shown, the <u>Premo</u> Court looked to the evidence and noted that it was "formidable."  <u>Id.</u> at 744; <u>see also</u> <u>id.</u> at 745 ("[T]he evidence against [the petitioner] was strong."). Further, and importantly, the Court specifically recognized that the petitioner <u>did not deny</u> committing the crimes charged.  <u>Id.</u>  The Court concluded by observing:

> Hindsight and second guesses are [] inappropriate, and often more so, where a plea has been entered without a full trial . . . .  The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance.  Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance.  The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases . . . where witnesses and evidence were not presented in the first place. The substantial burden to show ineffective assistance of counsel, the burden the claimant must meet to avoid the plea, has not been met in this case.

<u>Id.</u> at 745-46.  Accordingly, although I believe that the <u>Premo</u> decision supports our jurisprudence, at a minimum, it

5

demonstrates that our jurisprudence has not been clearly, directly, and explicitly overruled.

## II.

Turning to the facts of this case, the District Court found that Orocio "has not disputed the accuracy of the underlying facts giving rise to his guilty plea" and the parties do not contest that that finding is not clearly erroneous. Appendix ("App.") 12.[1] In addition, as in Premo, Orocio does not deny the charges against him; indeed, at oral argument before this Court, counsel conceded Orocio's guilt. Further, according to the Government, Orocio faced a mandatory minimum sentence of ten years on his drug trafficking charge. Plea counsel negotiated what was clearly an extremely favorable plea agreement for Orocio and, following his guilty plea, he was sentenced to time served (six months) and two years of supervised release. See App. 43-44.

Under these circumstances, including Orocio's failure to assert his factual innocence and the lenity of the Government's plea offer, I conclude that Orocio has not met his substantial burden of demonstrating a reasonable probability that the result of the proceeding would have been different. Accordingly, I believe Orocio failed to establish the prejudice prong of Strickland and I would affirm the

---

[1]I agree with the majority that a "guilty plea does not end the Hill inquiry." Majority Op. 24. I further agree that prejudice cannot be presumed in this case and that Orocio must establish actual prejudice to prevail. Majority Op. 22-23.

District Court's order denying Orocio's petition for a writ of error coram nobis.