*750 OPINION OF THE COURT
Marcy L. Kahn, J.
Defendant Gleni De Jesus stands convicted by plea of guilty of one count of attempted criminal sale of a controlled substance in the third degree (Penal Law §§ 110.00, 220.39 [1]). She now moves to renew, pursuant to CPLR 2221 (e), or, alternatively, to reargue, pursuant to CPLR 2221 (d), her motion to vacate her judgment of conviction pursuant to Criminal Procedure Law § 440.10 (1) (h), which motion was previously denied by this court after a hearing. Defendant urges renewal on the ground that new facts she now offers to the court would change its determination. Alternatively, she seeks reargument on the ground that this court overlooked or misapprehended matters of material fact and controlling law in making its determination. The People oppose the instant motion.
For the reasons stated below, defendant’s motion to renew her previous motion is denied; her motion to reargue her previous motion is granted; and, upon reargument, the motion to vacate the judgment is granted.
I. Factual and Procedural Background
A. Factual Background
The factual and procedural background of the case is set forth in detail in the prior written decisions of the court discussed infra, and only the portions pertinent for present purposes will be set forth here.
On July 29, 1998, a police officer observed defendant exchanging with another individual a tin of cocaine for a sum of United States currency. The officer arrested defendant and placed her in the rear of his patrol car. He later recovered two glassines of heroin and a tin of cocaine from the patrol car seat in which defendant had been sitting. Additionally, the officer was informed that a detective had found two tins of cocaine on the floor of the car of the other individual.
On December 2, 1998, defendant was indicted on charges of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) and criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), both class B felonies, in connection with the incident.
On May 4, 1999, pursuant to a plea agreement, defendant pleaded guilty to one count of attempted criminal sale of a controlled substance in the third degree (Penal Law §§ 110.00, 220.39 [1]) in full satisfaction of the indictment in exchange for *751 a sentence promise from the court of five years’ probation with intensive supervision.
On June 24, 1999, defendant was sentenced to five years’ probation with intensive supervision, in accordance with the plea promise.[1]
B. The CPL 440.10 Litigation
Defendant’s initial motion was filed by predecessor counsel in January 2010, prior to the Supreme Court’s issuance of its decision in Padilla v Kentucky (559 US —, 130 S Ct 1473 [2010]), and was based upon claims of ineffective assistance on both federal and state constitutional grounds, as well as her claim that she was actually innocent. On that motion, defendant argued that her conviction should be vacated due to her plea counsel’s alleged failure to advise her that her conviction would lead to automatic deportation. She further claimed that she would not have pleaded guilty had she known that she would be subject to mandatory deportation as a result.
On March 31, 2010, the Supreme Court issued its decision in Padilla. On May 21, 2010, new counsel appeared for De Jesus and filed a supplemental motion seeking vacatur of the judgment under Padilla. In response to the court’s inquiry, incoming defense counsel advised:
“After full review of the prior filings, we have decided that we will not adopt the arguments set forth in [predecessor counsel’s] motion. We will instead rely solely on the argument set forth in our motion filed May 19, 2010: that defendant did not receive effective assistance of counsel because her former attorney failed to advise her that her plea would subject [her] to mandatory deportation.” (Letter to the court from Dorea Silverman, Esq., dated June 28, 2010 [June 2010 letter].)
The prosecution initially conceded the retroactive applicability of Padilla to defendant’s case and suggested that the motion was appropriate for consensual resolution. (Letter to the court from Assistant District Attorneys Barbara Hutter, Esq., and Sherene Crawford, dated July 23, 2010.) In September 2010, the People reversed their position on both issues. (People’s mem of law in opposition, filed Sept. 20, 2010.)
On December 10, 2010, this court issued a written order granting defendant’s motion to the extent that it found that Pa *752 dilla applied retroactively to the collateral review of defendant’s case and directing that a hearing be held on the issues of whether defendant’s plea and counsel’s representation fell below an objective standard of reasonableness under Strickland v Washington (466 US 668, 688 [1984]), and whether, as a result of counsel’s representation, defendant suffered prejudice (see Hill v Lockhart, 474 US 52, 59 [1985]). On December 24, 2010, this court issued a written decision explaining that order. (See People v De Jesus, 30 Misc 3d 1203[A], 2010 NY Slip Op 52259[U] [Sup Ct, NY County 2010].) On February 2 and 15, 2011, this court held that hearing, and on March 15, 2011, issued its post-hearing written decision and order containing findings of fact and legal conclusions and denying defendant’s CPL 440.10 motion (People v De Jesus, 33 Misc 3d 1225[A], 2011 NY Slip Op 52112[U] [2011] [De Jesus II]). Specifically, in De Jesus II, this court found that plea counsel’s representation of defendant fell below an objective standard of reasonableness under the Strickland standard (Strickland v Washington, 466 US at 688) due to his failure to advise defendant of the immigration con sequences of her guilty plea (De Jesus II at *8) but also found that defendant did not suffer prejudice as a result of that failure. (Id. at *8-11.)
On April 20, 2011, defendant filed the instant motion, seeking to renew her previous motion on the ground that she is now proffering new facts not offered on the previous motion that would have changed the outcome of De Jesus II, and, in the alternative, seeking to reargue the previous motion on the grounds that the court overlooked or misapprehended the applicable law and the pertinent facts in its previous ruling. On June 27, 2011, the People filed their response in opposition to the motion. On July 14, 2011, defendant submitted a supplemental pleading in the form of a letter to this court requesting that the court consider the recent decision of the United States Court of Appeals for the Third Circuit in United States v Orocio (645 F3d 630 [2011]) in determining the instant motion. On August 1, 2011, the People, in the form of a letter to this court, responded to defendant’s July 14, 2011 submission. On August 5, 2011, defendant, in the form of a letter to this court, replied to the People’s August 1, 2011 submission.
II. Discussion
A. Threshold CPLR 2221 Issues
The threshold inquiry to be made by this court is whether defendant’s motion is a proper motion for renewal or reargument.
*753 1. Motion to Renew
On this motion, defendant urges renewal on the ground that she is offering new facts, in the form of certificates issued by the U.S. Immigration and Naturalization Service in 1997, attesting to the approval of visas for her five children. (Affirmation of Daniel S. Kratka, Esq., in support of motion [Kratka affirmation], exhibit D.) She also proffers her divorce decree from her first husband, Jose Polanco, along with her certificate of marriage to her current husband, David De Jesus (id., exhibit B); the birth certificate of her current husband revealing that he is an American citizen by birth (id., exhibit E); and her own affidavit in which she states, inter alia, that in 1999 two of her half brothers lived in the United States and that she worked as a perfume salesperson in her neighborhood, having stopped working as a waitress in 1998. (Id., exhibit C, affidavit of Gleni Castillo De Jesus, sworn Apr. 7, 2011 [defendant aff] H1Í 7, 8.) She maintains that these new facts correct the facts which were misrepresented in her presentence report (New York City Department of Probation presentence investigation report, June 21, 1999 [presentence report or PSI]) or clarify her testimony at the hearing, and that they would have changed the determination of the prior motion, had they been offered at the hearing.
CPLR 2221 (e) sets forth the three-pronged standard for a motion for leave to renew as follows:
“A motion for leave to renew:
“1. shall be identified specifically as such;
“2. shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination; and
“3. shall contain reasonable justification for the failure to present such facts on the prior motion.”
Here, defendant’s motion is identified as a motion to renew, and thus meets the first requirement. (CPLR 2221 [e] [1].)
The court recognizes the significance of the evidence proffered by defendant on this motion, particularly the certificates attesting to the approval of the children’s visas. Nevertheless, even assuming that the certificates and other documents proffered by defendant constitute “new facts” that would have changed the determination of the prior motion (CPLR 2221 [e] [2]), defense counsel knew or should have known of them prior to the CPL 440.30 (5) hearing and should have brought them to *754 the court’s attention at that time. Counsel neither did so nor now proffers any reasonable justification for not having done so. In the absence of such justification, the certificates and documents proffered by defendant do not meet the statutory requirements to serve as the basis for a motion to renew. (CPLR 2221 [e] [3].)
Nevertheless, citing Cruz v Bronx Lebanon Hosp. Ctr. (73 AD3d 597 [1st Dept 2010]), Rancho Santa Fe Assn. v Dolan-King (36 AD3d 460 [1st Dept 2007]), and Postel v New York Univ. Hosp. (262 AD2d 40 [1st Dept 1999]), defendant asserts that even if the requirements for renewal are not met, renewal may still be granted as a matter of substantial fairness. While a court may, in its discretion and in the interest of justice, grant a motion to renew even on the basis of facts known to the movant at the time of the original motion, a court may decline to exercise its discretion to do so where, as here, the movant fails to exercise due diligence in obtaining the evidence proffered in support of renewal and also fails to provide a reasonable explanation for not presenting those facts on the prior motion. (CPLR 2221 [e] [3]; Eddine v Federated Dept. Stores, Inc., 72 AD3d 487, 487-488 [1st Dept 2010].) In any event, as the arguments and supporting evidence provided by defendant may properly be considered on defendant’s motion to reargue (see section II. A. 2., infra), denial of the motion to renew does not result in deprivation of substantial fairness to defendant. In contrast, in each of the cases cited by defendant, had the court failed to relax the requirements for a motion to renew, the defendant would have been left without recourse, either because the defendant had not styled the motion in the alternative as one for reargument (see Cruz v Bronx Lebanon Hosp. Ctr., supra; Rancho Santa Fe Assn. v Dolan-King, supra), or because the motion had been improperly dismissed, thereby depriving the defendant of a full and fair opportunity to present the evidence. (Postel v New York Univ. Hosp., 262 AD2d at 42.)
Therefore, the instant motion, to the extent it seeks renewal of defendant’s previous CPL 440.10 motion, is denied.
2. Motion to Reargue
In the alternative, defendant seeks reargument of the previous motion on three grounds. She contends that the court overlooked or misapprehended certain relevant facts in deciding De Jesus II. Defendant also asserts that this court overlooked a significant aspect of the prejudice prong of the federal *755 Strickland-Padilla standard as applied to this case. As her third claim, defendant argues that this court overlooked or misapprehended that she was advancing a state law constitutional claim and therefore failed to address it in De Jesus II.
The three-part standard for a motion for leave to reargue is set forth in CPLR 2221 (d):
“A motion for leave to reargue:
“1. shall be identified specifically as such;
“2. shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion; and
“3. shall be made within thirty days after service of a copy of the order determining the prior motion and written notice of its entry. This rule shall not apply to motions to reargue a decision made by the appellate division or the court of appeals.”
In this case, defendant’s motion is identified specifically as a motion to reargue and was made within 30 days of service and notice of entry of De Jesus II, and thus meets the first and third requirements. (CPLR 2221 [d] [1], [3].)
With regard to the second requirement, defendant’s claim that this court overlooked or misapprehended certain facts in determining the previous motion provides a cognizable ground upon which a motion to reargue may be granted. Defendant has offered her divorce decree and marriage certificate (Kratka affirmation, exhibit B), certificates attesting to the approval of her children’s visa applications (id., exhibit D) and her own affidavit (defendant aff 111! 7, 8), which clarify the facts as presented on the previous motion with regard to her marital history, family ties in America, employment status and children’s immigration status at the time of her plea.
Defendant’s contentions that this court overlooked or misapprehended the applicable law on the underlying motion with regard to the federal Strickland-Padilla standard and failed to recognize that defendant was advancing a state constitutional claim are also cognizable grounds for a motion to reargue, and reargument is granted for that reason as well. (CPLR 2221 [d] [2].) Accordingly, defendant’s motion for reargument is proper under CPLR 2221 (d) and each of her claims will be addressed on its merits.
*756 B. Defendant’s Substantive Claims on Reargument
1. Facts Overlooked or Misapprehended
Defendant contends that in De Jesus II, this court overlooked or misapprehended the facts in several respects. Having reviewed both the PSI and defendant’s testimony at the hearing as clarified by defendant’s affidavit in support of this motion, the court now acknowledges that, in its findings of fact in De Jesus II, the PSI, on which it there relied, is, in several respects, inaccurate, incomplete and misleading, as will now be explained.
First, defendant contends that in finding that defendant’s children were all residing in the Dominican Republic at the time of her plea {De Jesus II at *10), the court overlooked and misapprehended the fact that, by that time, the U.S. Department of Justice had approved the visa applications of all of defendant’s five children and that all that remained in order to relocate them to New York was the ministerial matter of consular processing. Significantly, although the PSI stated that defendant’s former husband, Jose Polanco, “and [her] children live in the D.R.” (PSI at 4), it failed to mention that the children’s visa applications were approved and that they were on the verge of coming to the United States legally. At the hearing, when defendant was asked whether she made “arrangements to have [her] children come to the United States and join [her] to live here,” defendant replied, “My husband did the papers.” (Transcript of proceedings, Feb. 2, 2011 [tr], at 20.) Based upon this testimony, the court misapprehended that at the time of the plea, the only step taken in the children’s visa application process was that Mr. De Jesus had prepared the application papers. Based upon defendant’s submission of copies of certificates attesting to the approval of the children’s visa applications prior to the time of defendant’s plea, the court now understands that defendant and her husband had taken the visa application process nearly to completion, and that all that remained was for the children to pick up their visas at the proper consular post. (Kratka affirmation, exhibit D.)
Defendant also contends that statements contained in the PSI make it appear that defendant was married to both of her husbands at the same time. Indeed, the PSI reflects that “[i]n 1993, reportedly the defendant married David De Jesus” and that “[t]hey resided together for 5 years . . . .” (PSI at 4.) The PSI further states that “[i]n 1994, reportedly the defendant married Jose Polanco” at a time while she was, presumably, married to Mr. De Jesus. (PSI at 4.) Thus, a literal reading of *757 defendant’s marital history as set forth in the PSI would lead the reader to conclude that defendant was married to two husbands simultaneously, thereby calling into question the factual accuracy and reliability of the “Family & Environment” section of the PSI. (See PSI at 3-4.) In light of this apparent error, the accuracy of the PSI’s statement that defendant and David De Jesus had “separated” (PSI at 4) is called into doubt, and although this court relied upon it in De Jesus II (at *10), it does not credit it on this motion. In any event, supplementing defendant’s testimony (tr at 16, 18-19), her current affidavit (defendant aff at 4), divorce decree and marriage certificate (Kratka affirmation, exhibit B) clarify that she was divorced from her first husband, Jose Polanco, in 1993, finally severing any ties with him, and married her current husband, David De Jesus, in 1994.
Further, defendant maintains that the PSI statement contains another factual error, namely, that two of her half brothers, Luis and Rafael Portoreal, were residing in the Dominican Republic at the time of her conviction. Defendant has provided a sworn statement that, at the time of her plea, her half brothers Luis and Rafael actually lived in the United States and that her other half brothers, Mateo and Vicente, were imprisoned in the United States (defendant aff 1i 7), correcting the PSI statement that two of defendant’s half brothers, Luis and Rafael Porto-real, were “residing in the D.R.” (PSI at 4) and clarifying the PSI statement that Mateo and Vicente were “incarcerated at the present time” meant in the United States. (See PSI at 4.) Defendant’s affidavit also clarifies that her sister Yolanda, who, according to the PSI, “resides in the D.R.” (PSI at 4), “never came to the United States” and that defendant “was never close to her.” (Defendant aff 1Í 7.)
Therefore, to the extent that, in De Jesus II, this court credited information set forth in the PSI where inconsistent with defendant’s testimony (at *10), this court now acknowledges that it overlooked the inaccuracies in the PSI as to the dates of defendant’s marriages to her first and current husbands and that the siblings with whom she enjoyed a close relationship resided in the United States at the time of her plea, and misapprehended that the PSI was wholly reliable as a factual source. Proper resolution of these discrepancies is significant, in that they, together with the fact that defendant’s children were on the verge of legal entry into the United States, are pertinent to whether defendant had stronger family ties to this country *758 than to her country of origin which, if true, would have rendered the immigration consequences of her plea important to her had she known of them at the time of her plea allocution. Accordingly, on this motion, the court, having been made aware of the inaccuracies in the PSI and therefore deeming it unreliable with respect to the issues of her family ties to the United States, finds defendant’s testimony credible and the PSI not credible on these issues to the extent that there are any material factual discrepancies between the two.
Furthermore, this court credits defendant’s affidavit with regard to her employment history, as it clarifies defendant’s hearing testimony in this regard without contradicting it. Defendant explains that when the court inquired about her previous employment, she thought that the court was referring to 1998, when she was employed as a “[w]aitress in a restaurant,” rather than what her employment was at the time of her plea in 1999. (Tr at 60.) Thus, defendant’s testimony in this regard does not call the credibility of her testimony into question. In any event, the court finds that at the time of her plea defendant was gainfully employed in the United States as a perfume salesperson.
2. Defendant’s Federal Strickland-Padilla Prejudice Claim
a. Parties’ Contentions
Citing United States v Orocio (supra), defendant argues that in determining the previous motion in De Jesus II, this court overlooked or misapprehended a significant aspect of the federal Strickland-Padilla standard by failing to inquire whether, under the circumstances existing at the time of defendant’s plea of guilty, a rational defendant would have rejected the plea and proceeded to trial. (See Padilla v Kentucky, 559 US at —, 130 S Ct at 1485, citing Roe v Flores-Ortega, 528 US 470, 480 [2000].)
The People counter that Hill remains the standard for prejudice in the context of a Strickland claim involving a plea bargain and that the Orocio Court erred in concluding that in Padilla, the Supreme Court had equated the “reasonable probability” standard of Hill and the “rational defendant” standard of Roe. They cite the Court’s recent ruling in Premo v Moore (562 US —, 131 S Ct 733 [2011]), a post -Padilla case, which applied the Hill v Lockhart “reasonable probability” standard without mentioning Roe. (Premo v Moore, 562 US at —, 131 S Ct at 738.)
*759 b. Applicable Sixth and Fifth Amendment Principles
i. Sixth Amendment Standards as to Prejudice after Padilla
The Federal Constitution protects the right of a criminal defendant to counsel at trial with the guarantee of effective assistance of counsel to mount a defense. (US Const Amend VI.) In order to establish a constitutional violation under the Federal Sixth Amendment standard, a defendant must satisfy the two-pronged test of Strickland v Washington {supra). For purposes of this motion, this court need only address Strickland’s second prong, prejudice.[2]
To satisfy Strickland’s prejudice prong in the context of a claim of ineffective assistance in connection with a guilty plea, the defendant “must show that there is a reasonable probability that, but for counsel’s errors, [defendant] would not have pleaded guilty and would have insisted on going to trial.” (Hill v Lockhart, 474 US at 59). The Supreme Court defines reasonable probability as “a probability sufficient to undermine confidence in the outcome.” (Strickland v Washington, 466 US at 694.) “[A] defendant need not show that counsel’s deficient conduct more likely than not altered the outcome in the case,” however. (Id. at 693.)
Further, the “petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.” (Padilla v Kentucky, 559 US at —, 130 S Ct at 1485, citing Roe v Flores-Ortega, 528 US at 480.) Thus, defendant must demonstrate that, considering the totality of the circumstances at the time of the plea, “there is reason to think either (1) that a rational defendant would want to [reject the plea bargain and proceed to trial] . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in [rejecting the plea bargain and proceeding to trial].” (Roe v Flores-Ortega, 528 US at 480 [applying standard in the context of advice to a defendant concerning whether to appeal].)
Put otherwise, in advancing a claim of prejudice due to defense counsel’s failure to advise as to immigration consequences, the defendant need not demonstrate a likelihood of success at trial. (See United States v Orocio, 645 F3d 630, 643 [2011], citing Hill v Lockhart, 474 US at 59 [“The Supreme *760 Court . . . requires only that a defendant could have rationally gone to trial in the first place, and it has. never required an affirmative demonstration of likely acquittal at such a trial as the sine qua non of prejudice”].) Whether this determination is made through application of the objective “rational defendant” standard or the subjective standard of “reasonably demonstrated” interest, “courts must take into account all the information counsel knew or should have known” at the time of the defendant’s plea. (Roe v Flores-Ortega, 528 US at 480.)
In assessing Strickland prejudice on a claim of ineffective assistance of counsel based upon failure to advise a defendant of the immigration consequences of a guilty plea, the court must examine the claim not only in the light of factors such as the strength of the prosecution’s evidence, the availability of defenses, the likelihood of a conviction were the defendant to proceed to trial, defense counsel’s advice on the plea offer, and a comparison of the promised sentence after a guilty plea with the potential exposure upon a guilty verdict. (People v McDonald, 296 AD2d 13, 20 [3d Dept 2002], affd 1 NY3d 109 [2003].) Because “[preserving the client’s right to remain in the United States may be more important to the client than any potential jail sentence” (Padilla v Kentucky, 559 US at —, 130 S Ct at 1483, quoting INS v St. Cyr, 533 US at 322), the court may also have to consider the defendant’s relative family and employment ties to both the United States and her country of origin.
ii. Standards Relevant to the Determination of Entitlement to CPL 440,10 Relief on a Padilla Claim
In establishing an ineffective assistance of counsel claim, defense counsel’s competence and exercise of professional judgment are presumed. (See People v Hobot, 84 NY2d 1021, 1022 [1995].) The defendant must demonstrate that “the alleged ineffective assistance had an[ ] impact on the plea bargaining process or the voluntariness of the plea.” (People v Dunn, 261 AD2d 940, 940 [4th Dept 1999], lv denied 94 NY2d 822 [1999].) In this respect, “[a] trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences.” (People v Ford, 86 NY2d 397, 402-403 [1995], citing People v Harris, 61 NY2d 9, 19 [1983].) This does not require “any particular litany when allocuting the defendant, but due process requires that the record must be clear that ‘the plea represents a voluntary and intelligent choice among the alternative courses *761 of action open to the defendant.’ ” (Id. at 403, quoting North Carolina v Alford, 400 US 25, 31 [1970].)
c. Analysis
Although this court applied the standard of Hill v Lockhart in De Jesus II, it is constrained to agree with defendant that it erroneously failed to consider the other aspect of the prejudice standard referenced by the Supreme Court in Padilla, that being the two-part Roe v Flores-Ortega inquiry. Inquiry must also be made as to whether, under the circumstances presented, an objectively rational person in defendant’s position would have rejected the plea bargain and proceeded to trial, or whether defendant De Jesus reasonably demonstrated to her counsel that she was interested in taking the case to trial. (Padilla v Kentucky, 559 US at —, 130 S Ct at 1485; Roe v Flores-Ortega, 528 US at 480.)
In Padilla, the Court, relying on Roe, recognized the incorporation of the objective “rational defendant” standard of Roe within the Hill “reasonable probability” standard in the context of a claim of ineffective assistance based upon failure to warn of the immigration consequences of a plea. (See Padilla v Kentucky, 559 US at —, 130 S Ct at 1485, citing Roe v Flores-Ortega, 528 US at 480, 486 [“(T)o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances”].) Such analysis is dictated by the Court’s ruling in Padilla, not abrogated by it, as the People have argued. Indeed, in Roe, the United States Supreme Court cited Hill, observing that the “prejudice standard [in Roe] breaks no new ground, for it mirrors the prejudice inquiry applied in Hill v Lockhart, [supra]" (Roe v Flores-Ortega, 528 US at 485).
Viewing the facts of this case through the Padilla-Hill-Roe lens, the first prong of the prejudice analysis, the rational person inquiry, must examine the relative risks and consequences of going to trial or taking a plea, under the circumstances facing this defendant at the time of her plea, in light of the various factors noted above.
The first factor to be considered is the strength of the prosecution’s evidence. Here, the record shows that the prosecution’s case was not impermeable, in that the case involved an observation street sale, which took place at night, in the absence of any confirmatory identification procedure, and the police recovered the additional drugs in the patrol car, rather than from the person of the defendant. Further, although the *762 observation post officer would testify to having observed defendant and another individual engaging in hand-to-hand transactions at the same location for the preceding 30 minutes, he offered conflicting representations as to the identity of the person who handed the drugs to the buyer during the transaction for which defendant was charged.
Notwithstanding the People’s reasonably strong case, these factors could have supported an attack on the credibility of their sole eyewitness, and would have permitted defendant to argue that she was mistakenly identified as the seller, or that she was the buyer in the transaction.
The next factor to be considered is the likelihood of conviction were the defendant to proceed to trial. Although there would have been police testimony at trial to the effect that a tin package of cocaine matching the two tin packages recovered from the floor of the car driven by the alleged buyer was recovered from the seat of the patrol car where defendant had been sitting, the possibility nonetheless existed that defendant would have been acquitted at least of the sale count, and perhaps of the count of felony possession with intent to sell, had she proceeded to trial. In any event, as previously explained, the prejudice analysis does not require that defendant demonstrate a likelihood of success at trial. (See Strickland v Washington, 466 US at 693; United States v Orocio, 645 F3d at 630.)
With respect to counsel’s advice, the testimony at the hearing established that defendant’s attorney did not present comparative scenarios to her as to the respective consequences of pleading guilty and going to trial. Instead, he told her that everything would be all right and that she did not have to worry, because he had spoken to the assistant district attorney. At no time did he adequately explain to her the consequences of her entering a plea to a count involving an attempted sale of a narcotic drug. His sole contemplation was that she would plead guilty and receive a non-incarceratory sentence. (De Jesus II.)
Comparison of the promised sentence (five years’ probation with intensive supervision) with defendant’s potential exposure after a guilty verdict (likely the minimum indeterminate sentence of 1 to 3 years’ imprisonment,[3] as a first offender convicted of a single instance of selling a small quantity of *763 narcotics, rendering her eligible for parole after service of the minimum sentence of one year) demonstrates that the avoidance of the likely sentence at trial would not necessarily have compelled defendant to plead guilty to an aggravated felony, had she known of the certain immigration consequences of that plea. Rather, pursuing a course which afforded the possibility, even if not particularly strong, of maintaining her right to remain in the United States, via a full or partial acquittal at trial, may well have been more desirable to her than accepting inevitable deportation, even though it carried with it the risk of one year (or more) in state prison were she to be convicted at a trial. (Padilla v Kentucky, 559 US at —, 130 S Ct at 1483; INS v St. Cyr, 533 US at 322.)
The significance to defendant of the right to remain in this country, it now appears, would have loomed quite large at the time defendant entered her guilty plea in 1999. By that time, she had resided in the United States for most of the preceding six years, having returned to the Dominican Republic in or around 1994 to live for approximately one year in order to obtain a valid visa for herself in order to assure her legal residency and that of her children in the United States. (De Jesus II at *2.) She intended to make this country her home, having attained lawful permanent resident (LPR) status in 1996. She had been married to a United States citizen since 1994. And as defendant has now clarified, she was by then on the verge of bringing her five children, Wendy, Carla, Liza, Marobi and Jose, whose ages at the time ranged from 21 to 12, from the Dominican Republic to live in the United States. (See Kratka affirmation, exhibit D; defendant aff U 4; PSI at 4.)
With respect to defendant’s other family ties, respectively, to the United States and her country of origin, as stated above, defendant has now clarified that much of the information set forth in the PSI regarding defendant’s family members and their whereabouts was inaccurate or incomplete. This court now credits defendant’s testimony as clarified by her affidavit on this motion. (See discussion at II. B. 1., supra.) Based upon these clarifications, the court now finds that in 1999, defendant’s four half brothers, Luis, Rafael, Mateo and Vicente Porto-real, had since 1988 resided in the United States, although Mateo and Vicente were then incarcerated. In addition, defendant has testified that when she originally came to the United States *764 in 1993, she lived in New York with her half sister, Maria Porto-real (tr at 18), who was referenced in the PSI as having maintained a close relationship with defendant. (PSI at 4.)
With respect to defendant’s family ties to her country of origin, by contrast, this court now appreciates that, aside from defendant’s former husband, Jose Polanco, who “mistreat[ed her] with words” (tr at 17), her only other relative known to have resided in the Dominican Republic at the time of her plea was her sister Yolanda. (Defendant aff at 3.)[4] Thus, at the time of defendant’s plea, defendant’s known family ties to the Dominican Republic were limited to her abusive first husband and a half sister with whom defendant was not close.
With regard to defendant’s employment history, as defendant has now clarified on this motion, she was working as a seller of perfume at the time of her plea in 1999. From 1993 to 1998, she had worked in New York as a waitress. (See defendant aff at 8.) Both of these jobs allowed her to earn more than she would have earned in her native country. (See tr at 18.)
In sum, at the time of her plea, defendant was an LPR married to an American citizen; she was on the verge of bringing her children to the United States lawfully; most of defendant’s siblings whose whereabouts were known and all of those with whom she was close resided in this country; and defendant was gainfully employed in the United States at a higher salary than she would have earned had she remained in the Dominican Republic. Put simply, a rational defendant under these circumstances “could have been more concerned about a near-certainty of multiple decades of banishment from the United States than the possibility of [less than] a single decade in prison.” (United States v Orocio, 645 F3d at 645; see Padilla v Kentucky, 559 US at —, 130 S Ct at 1483; INS v St. Cyr, 533 US at 322.)
Padilla, Roe, Hill and Strickland require examination of the totality of the circumstances in each particular case and recognize that no one factor is dispositive. (Roe v Flores-Ortega, 528 US at 480; Strickland v Washington, 466 US at 690.) In this case, there was a chance, however slight, that defendant would have been acquitted had she chosen to proceed to trial. More significantly here, however, is the fact that at the time of *765 her guilty plea, defendant was building a life and a future for herself in the United States. For defendant, everything involved establishing a home in the United States with her husband and five children and residing in proximity to her closest siblings. Under all of these circumstances, it would have been rational for a person in defendant’s position, made fully aware of the consequences of her guilty plea, to have chosen to reject the plea bargain and proceed to trial, notwithstanding the risks of doing so, in an attempt to “preserv[e her] right to remain in the United States.” (Padilla v Kentucky, 559 US at —, 130 S Ct at 1483, quoting INS v St. Cyr, 533 US at 323.) Accordingly, there is a reasonable probability, i.e., one sufficient to undermine this court’s confidence that the case would have been resolved by defendant’s plea and ensuing sentence to five years of intensive supervision probation, that, but for her counsel’s failure to inform her of the then certain deportation consequence of her guilty plea, defendant De Jesus would not have pleaded guilty and would have insisted on going to trial. (Hill v Lockhart, 474 US at 59; Strickland v Washington, 466 US at 694.)
This conclusion is buttressed by defendant’s actions in contacting attorneys subsequent to her plea. On the day defendant pleaded guilty, she contacted her family attorney, Michael Cohen, and informed him that she had pleaded guilty earlier that same day and sought his advice concerning the effects of her plea. In doing so, defendant demonstrated that she remained unsettled about the plea, not relieved about it. While not as strong a demonstration of expression of interest in rejecting a plea as that in United States v Couto (311 F3d 179 [2d Cir 2002]), where the defendant immediately sought to withdraw his guilty plea upon learning that his counsel had affirmatively misled him about the immigration consequences of his plea (id. at 188), and while perhaps not rising to the level of satisfying Roe’s second prong that she have reasonably demonstrated to her counsel her desire to take the case to trial, defendant’s expression of her misgivings about the plea immediately upon having entered it supports the conclusion that, had she been fully informed of the immigration consequences of her plea, she would have been interested in rejecting the plea bargain and proceeding to trial. (See Roe v Flores-Ortega, 528 US at 480.)
Furthermore, defendant’s immediate seeking of immigration advice once she was stopped at John F. Kennedy Airport in 2008 and made aware of the immigration consequences of her plea affirms both her lack of awareness of the immigration conse *766 quences of her conviction and her overarching desire to remain in the United States. Indeed, prior to that time, defendant, an LPR, had travelled from the United States to the Dominican Republic on six or seven occasions since the time of her plea for purposes other than making her home there, unaware of any immigration consequences for her having done so. As defendant testified, “If I had been aware . . . that I could be deported, would you think that I would have [travelled]? I would have never travelled.” (Tr at 83.)
To the extent that the People argue that it is of no moment whether defendant knew of the immigration consequences of her plea, given the likelihood that she would have been convicted and deported even had she chosen to proceed to trial, their position is unsupportable. As stated above, in order to establish prejudice, defendant need not demonstrate the likely outcome at trial. (Strickland v Washington, 466 US at 693; United States v Orocio, 645 F3d at 643.) Rather, again, the proper inquiry is whether, given the totality of the circumstances, including the possibility, however slight, of avoiding the immigration consequences of a plea, a rational defendant in the defendant’s position would have rejected the plea and proceeded to trial. (Roe v Flores-Ortega, 528 US at 480; cf. People v McDonald, 296 AD2d at 20, quoting In re Resendiz, 25 Cal 4th 230, 254, 19 P3d 1171, 1187 [2001] [while a guilty plea rendered the defendant “deportable and excludable, ... a conviction following trial would have subjected him to the same immigration consequences”] .)[5]
Here, had defendant knowingly faced the options of pleading guilty and subjecting herself to “a near-certainty of multiple decades of banishment from the United States” (United States v Orocio, 645 F3d at 645) or proceeding to trial and risking a likely one-year period of incarceration and separation from her family upon conviction, she may well have chosen to proceed to trial in the hope of avoiding deportation and permanent exile from her loved ones upon partial or full acquittal. Moreover, had defendant proceeded to trial, it is not certain that she would have been convicted on the felony drug sale charge (Penal Law § 220.39). It is possible on the facts presented that defendant could have been convicted only of drug possession with intent to *767 sell (Penal Law § 220.16 [1]), or of simple drug possession (Penal Law § 220.03), as a lesser included offense, and thus might have avoided a conviction for an aggravated felony and the certainty of elimination of the possibility of discretionary cancellation of removal.
Furthermore, logically, the People’s position compels the conclusion that whenever an immigrant criminal defendant has pleaded guilty to an offense resulting in a lesser penalty than that available for the crime charged in the indictment, prejudice under Strickland may never be shown, absent a clear demonstration that the defendant would prevail at trial. As noted {supra at 759-760), such a conclusion is contrary to the established jurisprudence under Strickland and Hill. Moreover, under this view, there could never be any prejudice on a Padilla claim of ineffective assistance, because regardless of whether a rational defendant, aware of the immigration consequences of a guilty plea, would have proceeded to trial rather than plead guilty, the defendant would still be deported, if convicted of the top charge after trial. Such a conclusion would be in derogation of the holdings of the Supreme Court in Roe and Padilla.
For all of these reasons, this court finds that, under all the circumstances at the time of defendant’s plea as presented in this case, defendant has carried her burden of demonstrating a reasonable probability that she would not have entered the plea and would have insisted on going to trial absent her plea counsel’s ineffective assistance by showing that a rational defendant would have done just that. (Padilla v Kentucky, 559 US at —, 130 S Ct at 1485, citing Roe v Flores-Ortega, 528 US 470, 480 [2000].) Accordingly, this court now finds that defendant has established her claim of prejudice under the second prong of Strickland, and entitlement to vacatur of the judgment on the ground of ineffective assistance of counsel under the Sixth Amendment.
3. State Constitutional Claim
a. Defendant’s Contention
Defendant contends that this court overlooked or misapprehended that her present counsel intended to adopt predecessor counsel’s argument that defendant received ineffective assistance of counsel under the state constitutional {Baldi) standard. In the June 2010 letter, defense counsel stated that she would “not adopt the arguments set forth in [predecessor counsel’s] motion” but would “instead rely solely on the argument set forth in our motion filed [in] May [of] 2010: that de *768 fendant did not receive effective assistance of counsel because her former attorney failed to advise her that her plea would subject [her] to mandatory deportation.” Since defense counsel’s May 2010 motion made no express mention of any state constitutional ineffective assistance claim, this court understood the June 2010 letter to mean that defense counsel was no longer advancing defendant’s state constitutional claim. Nevertheless, in the interest of justice and in fairness to defendant, this court will deem this argument cognizable on the ground that the court overlooked or misapprehended counsel’s intention to advance such a claim within the reference to continuing the argument of defendant “not [having] receive[d] effective assistance of counsel.”
b. State Constitutional Standard
i. Meaningful Representation
Article I, § 6, of the New York State Constitution similarly guarantees a criminal defendant the effective assistance of counsel. This standard is flexible and “[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met. . . .” (People v Baldi, 54 NY2d 137, 147 [1981].) An attorney is presumed to have provided “meaningful representation,” and the burden of proving otherwise rests with the defendant. (People v Hobot, 84 NY2d 1021, 1022 [1995].)
ii. Prejudice as a Factor
While the Baldi standard speaks of an inquiry as to whether a defendant received “meaningful representation,” prejudice is not irrelevant under the New York standard. Rather, it is regarded “as a significant but not indispens[a]ble element in assessing meaningful representation.” (People v Stultz, 2 NY3d 277, 284 [2004].) Under the state standard, the “prejudice component focuses on the ‘fairness of the process as a whole rather than its particular impact on the outcome of the case.’ ” (People v Feliciano, 17 NY3d 14, 20 [2011].)
c. Analysis
Viewing the process of counsel’s representation of defendant as a whole, as of the time of the representation, the evidence presented demonstrates that although counsel secured a favorable, non-incarceratory plea bargain for defendant, he did so through what amounted to a factory-like processing of her case, *769 without any full consultation with her about either the consequences of her plea or her personal goals for her future. Counsel’s failure to secure a plea to a possession count, as opposed to a trafficking offense, so that defendant might have avoided a conviction for an aggravated felony (see De Jesus II at *6 n 8; Immigration and Nationality Act [INA], 8 USC § 1227 [a] [2] [A] [iii]), may have been the result of the differing policies of the Bronx and New York County District Attorneys’ offices (see De Jesus II at *5), but his failure to inform himself about the immigration consequences of his clients’ pleas and his failure to correct the erroneous statement on that subject by the judge at the time of defendant’s plea (see De Jesus II at *4, *1-2) can only be attributed to counsel’s professional deficiencies in his representation of her. And as this court held in De Jesus II, counsel failed to adhere to the objectively reasonable standards of professional conduct by failing to warn defendant that by pleading guilty to an aggravated felony, she would be subject to mandatory deportation, with no opportunity for cancellation of her removal by the Attorney General. (See De Jesus II at *7 n 10; INA, 8 USC § 1227 [a] [2] [A] [iii]; § 1229b [a]; § 1182 [h].)
Given defendant’s focus at the time of the representation on establishing a life for herself and her children in the United States, and maintaining her family and employment ties in this country, counsel’s shortcomings were serious enough to deprive his client of the meaningful representation to which she was entitled under the State Constitution. (See People v Turner, 5 NY3d 476, 483 [2005] [“a single failing in an otherwise competent performance is so egregious and prejudicial as to deprive a defendant of his constitutional right”] [internal quotation marks omitted].) In view of the particular circumstances of this case at the time of plea counsel’s representation of defendant, viewed in their totality (People v Baldi, 54 NY2d at 147; People v Bowles, 89 AD3d 171, 177 [2d Dept, Nov. 1, 2011]), and in light of the lack of fairness of the process as a whole to defendant (People v Feliciano, 17 NY3d at 20; People v Stultz, 2 NY3d at 284), the court concludes that defendant has met her burden of demonstrating that she did not receive meaningful representation and was denied effective assistance of counsel, which also had an effect on the voluntariness of her plea. (People v Baldi, 54 NY2d at 147; People v Hobot, 84 NY2d at 1022; People v Dunn, 261 AD2d at 940.) Her motion to vacate the judgment on state constitutional grounds is, therefore, granted.
*770 III. Conclusion
For the reasons stated, defendant’s motion, pursuant to CPLR 2221 (e), to renew the motion to vacate the judgment of her conviction pursuant to CPL 440.10 is denied. Defendant’s motion, pursuant to CPLR 2221 (d), to reargue her CPL 440.10 motion is granted. Upon reargument, defendant’s motion to vacate the judgment entered on June 24, 1999 is granted on grounds of ineffective assistance of counsel under the Federal and State Constitutions. The parties are directed to present themselves to the court for the scheduling of a trial date.

. The justice who took defendant’s guilty plea and imposed sentence has since retired.

. In Be Jesus II, this court found that defendant’s plea counsel’s representation fell below an objective standard of reasonableness, thereby violating Strickland’s first prong. (De Jesus II at *8, citing Strickland v Washington, 466 US at 688, and Padilla v Kentucky, supra.)

. Defendant, who was 38 years of age at the time of her plea, would not have been eligible for shock incarceration, because the amendment raising the statutory age limit for an “eligible inmate” from 35 to 40 was not in effect *763 until three months after defendant pleaded guilty. (See L 1999, ch 412, part B, § 1, eff Aug. 9, 1999, amending Correction Law § 865 [1].)

. The PSI also mentions that in 1999, defendant also had two other half sisters: Dulcía and Evelisse, and three other half brothers: Nuri, Jose and Victor, her father’s children from “various liaisons” (PSI at 4), but fails to identify either the country of residency of these siblings or whether they maintained any continuing contact with defendant.

. On this point, both Resendiz and McDonald have been abrogated by Padilla (see Padilla v Kentucky, 559 US at —, 130 S Ct at 1483 [“(p)reserving the client’s right to remain in the United States may be more important to the client than any potential jail sentence”]).