

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

EX PARTE: MANUEL CISNEROS

§

§

§

§

§

§

§

No. 08-11-00180-CR

Appeal from the

168th District Court

of El Paso County, Texas

(TC# 20040D05971-168-1)

## **O P I N I O N**

The State of Texas appeals a grant of habeas corpus to Manuel Cisneros contending in two issues that: (1) the rule in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) was a new rule and therefore not to be applied retroactively; and (2) that the trial court abused its discretion in granting Cisneros' post-conviction habeas relief where Cisneros failed to show a reasonable probability that, but for his counsel's actions, he would have rejected a guilty plea and insisted on going to trial, and failed to prove ineffective assistance of counsel, pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For the reasons set out below, we reverse.

### **FACTUAL SUMMARY**

On October 17, 2004, Officer Noe Juarez of the Socorro Police Department went to the

Fiesta Bar to assist with an investigation by the Texas Alcoholic Beverage Commission. When Officer Juarez entered the bar, Cisneros, while keeping an eye on the officer, whistled and rushed to the end of the counter where several customers were seated, then grabbed an ashtray and rushed toward the middle of the bar. As Officer Juarez moved towards Cisneros and attempted to go behind the counter, the customers who had been sitting at the end of the counter blocked the entrance to prevent Officer Juarez from stopping Cisneros. Cisneros dumped the ashtray's contents into a bowl containing water and added more water. When Officer Juarez broke through the barricade and approached Cisneros, he saw a white powdery substance dissolving in the bowl of water. When Officer Juarez attempted to pour the water out of the bowl and preserve the white powdery substance, Cisneros grabbed the side of the bowl to prevent Officer Juarez from doing so. Officer Juarez took Cisneros into custody at that point but was unable to preserve any of the substance.

Officer Juarez conducted a search incident to arrest and found a small baggie containing a white powdery substance in the right front coin pocket of Cisneros' jeans. A field-test was conducted on the substance, which tested positive for cocaine. Officer Cisneros was instructed to submit the case as a non-arrest as his assistance was needed at a traffic accident with fatality. In the supplemental offense report, Cisneros was accused of committing the offenses of tampering with physical evidence and possession of cocaine.

Cisneros was indicted for the state-jail felony offense of possession of cocaine in an amount of less than one gram, while the evidence tampering charge was declined for prosecution. Pursuant to a plea agreement with the State, which included an agreement to prosecute the offense as a class-A misdemeanor pursuant to TEX.PENAL CODE ANN. § 12.44(b)(West 2011), Cisneros

2

pled guilty to the offense as charged in the indictment, and the trial court assessed punishment at nine months' confinement, probated for eighteen months, placing him on community supervision, and a $500 fine. Cisneros did not appeal the trial court's order placing him on community supervision.

At the hearing on the guilty plea, Cisneros acknowledged that he signed the plea papers and further acknowledged that he understood to what offense he was pleading guilty. The Court asked Cisneros the following:

Court:   Are you a citizen of the United States?
Cisneros:   No, sir.
Court:   Do you understand that a plea here today could subject you to deportation, exclusion from admission, denial of naturalization under federal law, sir?
Cisneros:   Yes, Sir.

Cisneros also signed an acknowledgement that by pleading guilty to the offence that he may be deported, excluded from future admission to the United States, or denied naturalization.

On April 6, 2010, a Notice to Appear was issued to Cisneros by the Department of Homeland Security, advising that removal proceedings had been commenced against him. According to the Notice, Cisneros entered the United States on or about January 1, 2009 as a nonimmigrant visitor with authorization to remain in the United States for a temporary period not to exceed 30 days; that Cisneros remained in the United States beyond those 30 days without authorization; and that Cisneros was convicted in 2005 for the offense of Possession of a Controlled Substance. The Department of Homeland Security charged that Cisneros was subject to removal pursuant to: (1) Section 237(a)(2)(B)(i) of the Immigration and Nationality Act, in that Cisneros was convicted of a violation of a State law relating to a controlled substance; and (2) Section 237(a)(1)(B) of the Immigration and Nationality Act, in that after admission as a

nonimmigrant, Cisneros remained in the United States for a time period longer than permitted under the Immigration and Nationality Act.

Cisneros filed an application for writ of habeas corpus under Article 11.072 of the Code of Criminal Procedure on December 15, 2010. The trial court held an evidentiary hearing on March 3, 2011, and another hearing on April 28, 2011, where the court heard further argument. At the March 3 hearing, Cisneros[1] presented an affidavit stating, in relevant part:

> My wife is a United States citizen. I am eligible to adjust my status to a lawful permanent resident through my wife. I told both Travis Ketner and Manual Barraza [Cisneros' attorneys][2] that I was not a citizen, that I lawfully entered the United States on a visitor visa. Neither Mr. Ketner nor Mr. Barraza told me that I would lose my chance to become a lawful permanent resident if I pled guilty. Neither lawyer told me that I would be detained in jail by immigration if I pled guilty. Neither told me that I would be deported for life if I pled guilty. If I had known about the immigration consequences, I would have fought my case or asked my attorneys to allow me to plead to a crime that would not make me deportable for life. My 3 children are citizens of the United States. My wife and children live in the United States. I need to be with my wife and children and do my duties as a husband and father.

In his affidavit, Cisneros challenged the facts presented in the plea hearing, stating, in part, that the police "said they found a one dollar bill with drug residue, but I know nothing about that." At the hearing, Cisneros presented testimony from his family members, neighbors, and acquaintances, who testified about Cisneros' relationship with his family and about his character in general.

Cisneros' wife testified on cross-examination that she believed Cisneros would have wanted to avoid going to jail and that the desire to avoid jail time would have been a reason for him to plead guilty in exchange for probation. She also testified that Cisneros' laser visa had expired

---

[1] Cisneros was not present, being held at an immigration detention center at the time of the hearing.

[2] At the April 28, 2011 hearing, the trial court announced that it was going to find Mr. Ketner and Mr. Barraza "unavailable" to Cisneros. *See* Findings of Fact # 18.

4

and Cisneros had not obtained a renewal. She was present at some, but not all, of the meetings Cisneros had with his attorneys and was not sure what may have been discussed. She and Cisneros did not discuss adjusting his immigration status until she became a citizen in 2007.

Following the March 3 hearing, the trial court entertained additional argument on several issues via email. [3] Among the arguments and documents received was the "Applicant's Memorandum on Immigration Consequences of Plea to Texas Penal Code Sec. 37.09." In the Memorandum, Cisneros argued that if he had been convicted of the evidence tampering charge, a third-degree felony instead of the State jail felony of possession of cocaine, he would have been likely convicted of a crime that involves "moral turpitude" and subject to deportation but would have also been eligible for a waiver relating to his immigration status, and supplemented the Memorandum to argue this in support of his prejudice argument. On April 28 a second hearing was held, which focused on the additional arguments requested by the court. The trial court granted the writ of habeas corpus on May 3, 2011, and issued findings of fact and conclusions of law on October 14, 2011. The State timely appealed.

## HABEAS RELIEF

The State contends that: (1) the rule in *Padilla* was a new rule and therefore not to be applied retroactively; and (2) that the trial court abused its discretion in granting Cisneros' post-conviction habeas relief where Cisneros failed to show a reasonable probability that, but for his counsel's actions, he would have rejected a guilty plea and insisted on going to trial, and failed to prove ineffective assistance of counsel, pursuant to *Strickland*.

### Standard of Review

We apply an abuse of discretion standard when reviewing a trial court's decision to grant or

---

[3] These emails, compromising some five hundred-plus pages of material, were included in the clerk's record.

deny habeas relief. *Ex parte Wheeler*, 203 S.W.3d 317, 323 (Tex.Crim.App. 2006); *Washington v. State*, 326 S.W.3d 701, 704 (Tex.App.--Houston [1st Dist.] 2010, no pet.); *Ex parte De Los Reyes*, 350 S.W.3d 723, 728 (Tex.App.--El Paso 2011, pet. granted), *rev'd*, -- S.W.3d --, 2013 WL 1136517 (Tex.Crim.App. March 20, 2013). We view the facts in the light most favorable to the trial court's ruling and defer to the trial court's implied factual findings that are supported by the record. *Ex parte Wheeler*, 203 S.W.3d at 325-26; *Washington*, 326 S.W.3d at 704. *See also Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App. 2003)(per curiam)(holding that reviewing courts afford almost total deference to the court's determination of the historical facts supported by the record, especially when those facts are based on an evaluation of credibility and demeanor, and that if the trial court does not make explicit findings that the reviewing court will grant deference to implicit findings that support the court's ruling), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex.Crim.App. 2007); *Ex parte De Los Reyes*, 350 S.W.3d at 728 (noting same). To the extent the ultimate resolution of the application turns on an application of law, we review the determination *de novo*. *Ex parte Peterson*, 117 S.W.3d at 819. We will reverse the trial court's ruling only if we conclude it is arbitrary, unreasonable, and made without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g).

## Ineffective Assistance of Counsel

To be entitled to habeas relief on the basis of ineffective assistance of counsel, a petitioner must prove by a preponderance of the evidence that: (1) counsel's performance was deficient; and (2) that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte De Los Reyes*, 350 S.W.3d at 730. To establish

6

deficient performance, the petitioner must show that counsel's performance "fell below an objective standard of reasonableness" based on "prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064-65. Under the performance inquiry we consider all of the circumstances, with a strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance . . . ." *Id.* at 689, 104 S.Ct. at 2065. To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010). The defendant must show both components; failure to show either deficient performance or prejudice will defeat the ineffectiveness claim. *Id.*, *citing Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

When the prejudice prong of *Strickland* is dispositive, we need only address that prong on appeal. *Seamster v. State*, 344 S.W.3d 592, 594 (Tex.App.--Houston [14th Dist.] 2011, pet. ref'd). "[I]t is not necessary to determine whether trial counsel's representation was deficient if appellant cannot satisfy the second *Strickland* prong." *My Thi Tieu v. State*, 299 S.W.3d 216, 225 (Tex.App.--Houston [14th Dist.] 2009, pet. ref'd). "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"[4] *Id.*, *quoting Strickland*, 466 U.S. at 697, 104 S.Ct. at 2052. We conduct a *Strickland* prejudice review under a *de novo* standard, giving deference to any underlying historical fact determinations by the habeas court. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex.Crim.App. 2005), *cert. denied*, 546 U.S. 1181, 126 S.Ct. 1355, 164 L.Ed.2d 66 (2006).

The second prong of *Strickland* requires the defendant to show that counsel's errors were

---

[4] This is because the reviewing court's purpose "is not to grade trial counsel's performance." *My Thi Tieu,* 299 S.W.3d at 225, *citing Strickland*, 466 U.S. at 697, 104 S.Ct. at 2052.

so serious that they deprived the defendant of a fair and reliable trial.[5]  *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.   In other words, an appellant must show there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.  *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.   When we evaluate whether the alleged deficient performance of counsel prejudiced a defendant when entering a guilty plea, we consider whether the defendant showed that there was a reasonable probability that, but for counsel's error, he would not have pled guilty but instead would have gone to trial.  *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *Premo v. Moore*, ⸺ U.S. ⸺, 131 S.Ct. 733, 743, 178 L.Ed.2d 649 (2011)(noting that to establish prejudice in the context of a guilty plea, a challenger must establish the same "reasonable probability" standard set out in *Hill*); *Johnson*, 169 S.W.3d at 231.   A "reasonable probability" is a standard of proof "somewhat lower" than a preponderance of the evidence.  *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

*Strickland* imposes a "high bar" that "must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." *Premo,* 131 S.Ct. at 739-40 (internal quotation marks omitted).[6]   As the Supreme Court

---

[5]  Deprivation of a fair trial is a structural defect, which amounts to a serious denial of the entire judicial proceeding itself.  *Johnson*, 169 S.W.3d at 231.   Therefore, the focus of this prong is whether appellant was deprived of his right to a trial, not whether the outcome of the trial would have been favorable to him.  *Id*.

[6]  In an email to counsel for Cisneros and the State, the trial court expressed skepticism that *Premo* applied to a *Padilla* matter, stating "comparing a plea-before-something-else-is-filed as a trial strategy to get someone off, is apples and oranges to an immigration safe trial strategy where time-punishment is not an issue."   We acknowledge that this is a developing area, however other courts throughout the country have applied *Premo* to a *Strickland* analysis, particularly when tied to a *Padilla* challenge, and we will do the same.   *See Stiger v. Commonwealth of Kentucky*, 381 S.W.3d 230, 237 (Ky 2012)(applying *Premo* to *Padilla* challenge relating to guilty plea); *Campos v. State*, 816 N.W.2d 480, 507 (Minn. 2012)(same); *Commonwealth v. Clarke*, 949 N.E.2d 892, 905-6 (Mass. 2011)(same); *Denisyuk v. State*, 30 A.3d 914, 919 (Md 2011)(same); *State v. Gonzalez*, 807 N.W.2d 759, 767 (Neb. 2012)(same); *see also United States v. Orocio*, 645 F.3d 630, 648-49 (3rd Cir. 2011)(discussing *Premo* in dissent in discussion of

noted in *Premo*, there is a heavy burden on an appellant:

> Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial . . . . There is a most substantial burden on the claimant to show ineffective assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place.

*Id.* at 745-46.

In determining whether a defendant would have pled guilty but for counsel's deficient advice, a court is to consider the circumstances surrounding the plea and the gravity of the alleged failure material to that determination. *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex.Crim.App. 1999). Just as importantly, a challenger must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *See Ex parte Fassi*, 388 S.W.3d 881, 887 (Tex.App.--Houston [14th Dist.] 2012, no pet. h.), *citing Padilla*, 130 S.Ct. at 1485. "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *Fassi*, 388 S.W.3d at 887, *citing United States v. Smith*, 844 F.2d 203, 209 (5th Cir.1988)(per curiam).

We must determine whether an appellant proved there is a reasonable probability that but for counsel's errors, he would not have pled guilty, which requires proof that a decision to reject the plea bargain was rational under the circumstances. *Fassi*, 388 S.W.3d at 887, *citing Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex.Crim.App. 2010); *Padilla*, 130 S.Ct. at 1485. We make the prejudice inquiry on a "case-by-case basis, considering the circumstances surrounding the plea and the gravity of the alleged failure." *Id.* We note that the habeas court was free to disbelieve an appellant's self-serving testimony that he would not have pled guilty if he had been aware of the

---

prejudice under *Padilla*).

immigration consequences of his plea.[7]  *See Ex parte Moreno*, 382 S.W.3d 523, 528-29 (Tex.App.--Fort Worth 2012, pet. ref'd); *Ex parte Ali*, 368 S.W.3d 827, 840-41 (Tex.App.--Austin 2012, pet. ref'd).

## Prejudice?

Cisneros was charged with a single count of possession of cocaine and entered into a negotiated plea agreement where Cisneros agreed to plead guilty to a misdemeanor offense under Texas Penal Code § 12.44(b).  The trial court assessed punishment at nine months' confinement, probated for eighteen months, placing him on community supervision, and a $500 fine.[8]  The federal government had the right to commence deportation proceedings against Cisneros based on his guilty plea to a charge of possession of cocaine.  *See* 8 U.S.C.A. § 1227(a)(2)(B)(i)(West 2008).  Cisneros argues that the ineffectiveness of his counsel rendered his guilty plea involuntary under *Padilla*, but acknowledges that the *Strickland* analysis applies to guilty pleas.  Cisneros asserts that *Padilla* moved away from a "trial-outcome" approach regarding prejudice, noting that *Padilla* cited to neither *Strickland* nor *Hill* in its "rational under the circumstances" analysis.[9]

Cisneros argues that the affidavit he provided shows that he suffered prejudice because: (a) it would have been rational to reject the plea bargain and take the case to trial; or (b) it would

---

[7] It is irrelevant that an appellant actually became the subject of deportation proceedings as a result of his plea.  *See Aguilar v. State*, 375 S.W.3d 518, 526 n.8 (Tex.App.--Houston [14th Dist.] 2012, no pet.)(ongoing deportation proceedings not necessary to assert *Padilla* claim); *cf. Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (adequacy of representation should not be evaluated with "the distorting effects of hindsight").

[8] If the case had been prosecuted as a state jail felony, Cisneros faced a possible jail sentence of 180 days up to two years.  TEX.PENAL CODE ANN. § 12.35(a)(West Supp. 2012).  If Cisneros had been prosecuted for evidence tampering, a third-degree felony, he faced a potential punishment of imprisonment from two to ten years.  TEX.PENAL CODE ANN. § 12.34(a)(West 2011).

[9] The Supreme Court cited *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486, 120 S.Ct. 1029,1036, 1039, 145 L.Ed.2d 985 (U.S. 2000), which drew extensively from *Strickland* and *Hill* in its analysis.  As *Roe* notes, the application of *Strickland* and whether the defendant made the requisite showing depends on the facts of a particular case.  *Roe*, 528 U.S. at 485, 120 S.Ct. at 1039.

have been rational to reject the plea bargain and attempt to secure an alternative, immigration-safe disposition plea. Certainly *Padilla* recognized that an alien defendant might rationally be more concerned with removal than with a term of imprisonment, *see Padilla*, 130 S.Ct. at 1483 (recognizing that "'[p]reserving a client's right to remain in the United States may be more important to the client than any potential jail sentence'")(citation omitted), a position noted in the Third Circuit's decision in *United States v. Orocio*, 645 F.3d 630, 643-44 (3rd Cir. 2011), which Cisneros directs this Court in support of his argument. As the *Oroico* court noted:

> For the alien defendant most concerned with remaining in the United States, especially a legal permanent resident, it is not at all unreasonable to go to trial and risk a ten-year sentence and guaranteed removal, but with the chance of acquittal and the right to remain in the United States, instead of pleading guilty to an offense that, while not an aggravated felony, carries 'presumptively mandatory' removal consequences.

*Orocio*, 645 F.3d at 645.

The facts presented at the habeas hearing belie Cisneros' comparison of *Orioco* to the instant case. The record in *Orocio* was slender, and the only source of facts, apart from the official record of the underlying criminal record, was the affidavit of the defendant. No further evidence was submitted and no evidentiary hearing was conducted. *Id.* at 634 n2. While Cisneros' affidavit asserts that immigration consequences were a concern, testimony given by his wife while on cross-examination indicate that there was no discussion of potential changes in immigration status until two years after the guilty plea was entered. We find *Orioco* distinguishable on these facts.

Cisneros' immigration concerns are closer to those of the appellant in *Moreno*, where "appellant's apparent total inaction upon receiving repeated verbal and written warnings about the possibility of his deportation . . .," supported the trial court's finding that the appellant's

11

immigration status was not his primary concern. *Ex parte Moreno*, 382 S.W.3d at 529. *Cf. Elizondo-Vasquez v. State*, 361 S.W.3d 120, 123 (Tex.App.--Texarkana 2011, no pet.)("[The defendant] testified that his immigration status was his primary concern and that he discussed it at every meeting with trial counsel. In those discussions, he specifically inquired of trial counsel about the issue and the effect his plea would have upon it, as well as potential outcomes."). Here, Cisneros' wife testified that she believed Cisneros would have wanted to avoid going to jail and that the desire to avoid jail time would have been a reason for him to plead guilty in exchange for probation. Cisneros' affidavit does not indicate that he asked either of his counsel about possible immigration consequences, stating that while he told them of his immigration status, they never advised him of the consequences.

As in *Moreno*, there was no evidence presented that the State was willing to accept a plea bargain for anything other than a controlled substance charge. *Ex parte Moreno*, 382 S.W.2d at 529. Cisneros argues that an immigration-safe disposition would have been possible and the failure to seek such compounded the prejudice in this case. In the findings of fact, the trial court accepted this position: "The Court finds that Mr. Cisneros could have been, but wasn't, charged with the criminal offense upon which was the basis for the search." Assuming that Cisneros had been charged with evidence tampering, this might have led to an immigration consequence where Cisneros may have been eligible for discretionary relief, as he contends in his Memorandum.[10] Had that been the case, Cisneros would have been facing a possible two to ten year jail sentence for

_____

[10] If this were truly the case, then Cisneros' deportation consequence is not clear, a situation noted by our sister court in *Ex Parte Rodriguez*, 378 S.W.3d 486, 493 (Tex.App.--San Antonio 2012, no pet.)(noting that "[b]ecause the final result of the defendant's plea depends on relief that may or may not be granted, the defendant's eligibility for cancellation of removal makes the deportation consequence unclear or uncertain" under *Padilla*). In a circumstance where a deportation consequence is unclear, a trial court's warning that a charge contains a risk of immigration consequences precludes constitutional prejudice from plea counsel's failure to give the required warning. *Ex parte Rodriguez*, 378 S.W.3d at 496-97.

the third degree felony of evidence tampering. In *Moreno*, a disparity of sentences (pleading to possession of cocaine rather than facing a possible life sentence for possession-with-intent-to-deliver) was such that:

> The trial court could have reasonably found that it was logical for appellant to take the plea bargain for a lesser charge with the possibility of receiving deferred adjudication, instead of incurring the time and expense of trial, where appellant could have been convicted and sentenced to substantial incarceration in addition to being deported.

*Moreno*, 382 S.W.3d at 529 (citation omitted).

Here, the trial court concluded that Cisneros would have rejected the plea offer and taken the case to trial had he known of the immigration consequences. This conclusion cuts against the reasonability of accepting the plea as noted in *Moreno*.

Another consideration in the prejudice analysis is the underlying facts of the offense and whether it would have been rational for Cisneros to take the matter to trial. The trial court, in its findings of fact, accepted the statements made by Cisneros in his affidavit:

> The Court finds that the underlying allegations of whether Mr. Cisneros actually possessed cocaine are in dispute. The State submitted a proffer at the plea hearing that police officers would testify that a small amount of cocaine was found on Mr. Cisneros incidental to an arrest in which Mr. Cisneros interfered with an investigation being conducted by the Texas Alcoholic Beverage Commission. Mr. Cisneros acknowledges that he was searched but denies possession of the cocaine, stating that 'they said that they found a one dollar bill with drug residue, but I know nothing about that.'

However, Cisneros does not raise any viable defensive theories apart from this statement, which is challenged by the evidence attached to the State's response to the writ in the form of the police report filed by Officer Juarez, which indicates that Cisneros was searched almost immediately after being taken into custody. While a motion to suppress evidence was filed in the

13

underlying criminal case, the record does not reflect that the trial court ruled on that motion.[11] There is no clear factual defense presented by Cisneros to the underlying charge. *Compare Salazar v. State*, 361 S.W.3d 99, 103 (Tex.App.--Eastland 2011, no pet.)(reversing denial of writ of habeas corpus and finding that applicant could have rationally rejected plea deal where trial risk was greater than plea, but applicant had viable factual defense to underlying charge).

We do not hold that the evidence is *per se* insufficient to show prejudice. We conclude that based on the record, the trial court lacked a reasonable basis to conclude that Cisneros proved by a preponderance of the evidence that he was prejudiced by and would not have pled guilty but for his trial counsel's allegedly deficient conduct. Viewing the evidence in the light most favorable to the trial court's ruling, we find that the trial court abused its discretion by determining that Cisneros met his burden to show prejudice. Having determined that the habeas court abused its discretion with regard to the second prong of the *Strickland* analysis, we sustain Appellant's second issue.

### Retroactive Application of Padilla?

As we have resolved this case on the State's second issue, we did not engage in a discussion of the retroactive application of *Padilla*. However, after this cause was submitted, the United States Supreme Court issued an opinion regarding the retroactive application of *Padilla*. In *Chaidez v. United States*, -- U.S. --, 133 S.Ct. 1103, 81 USLW 4112 (2013), the Court held that *Padilla* did not apply retroactively to a defendant whose conviction became final before *Padilla* was decided. *Chaidez*, 133 S.Ct. at 1107. The jurisprudence in this Court has previously held

---

[11] The evidence of the tampering with evidence was possibly admissible, either as extraneous-offense evidence, *see Bass v. State*, 270 S.W.3d 557, 562 (Tex.Crim.App. 2008)(holding that extraneous-offense evidence is admissible to rebut a defensive theory of fabrication or "frame-up"), or as same-transaction contextual evidence. TEX.R.EVID. 404(b); *McDonald v. State*, 148 S.W.3d 598, 602 (Tex.App.--Houston [14th Dist.] 2004), *aff'd,* 179 S.W.3d 571 (Tex.Crim.App. 2005).

14

that *Padilla* applied retroactively.  *See, e.g. Ex parte De Los Reyes*, 350 S.W.3d at 729 (holding *Padilla* applied retroactively and finding prejudice under *Strickland*).  To the extent that *Chaidez* clarifies the retroactivity of *Padilla*, we so acknowledge and hold that *Padilla* does not apply retroactively to cases decided prior to the date of the *Padilla* decision, March 31, 2010.

## CONCLUSION

Having sustained the State's second issue, we reverse the order of the trial court and reinstate Cisneros' conviction.

March 28, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Antcliff, J., and Chew, C.J. (Senior)
(Antcliff, J., Not Participating)
Chew, C.J. (Senior)(Sitting by Assignment)

(Do Not Publish)